## NATIONAL SURETY COMPANY *v.* FARMERS STATE BANK OF SPARKS.

1. Where a fidelity or guaranty company issued to an employer a bond, agreeing, at the expiration of three months after proofs of loss should be furnished, to pay to the employer the amount of any loss or damage that should happen to such employer, in respect of any funds, property, or estate belonging to or in the custody of the employer, through the dishonesty of any of the employees embraced within its provisions, or through any act of omission or commission of any such employees, done or omitted in bad faith; if the employer, a bank, suffered a loss by reason of the dishonesty of its cashier, or assistant cashier, and both were included within the indemnity contract, in a suit on such bond the employer might allege in one count that the loss occurred by reason of the dishonesty of the cashier, and in another count that it occurred by reason of the dishonesty of the assistant cashier. And an action so brought was not demurrable on the ground that it included contradictory causes of action.

2. Where a bond of the character indicated in the preceding headnote provided that it should apply to the employees named in a schedule thereto attached, but also contained provisions by which other employees might be brought within the scope of its operation, and by which the bond might be continued in force beyond the term mentioned in it; and where suit was brought by the employer for a loss of the character for which in the bond indemnity was provided to be made, and there was an allegation that the employees named in the schedule attached to the bond "and in the extension thereof, for whose conduct, misfeasance, defalcation defendant became liable under the terms of said bond," were the cashier and the assistant cashier of the employing bank, and that the loss occurred during the life of the bond and while it was in full binding force and effect, an amendment which alleged that the assistant cashier, whose name did not appear in the original schedule, had been added to the employees covered by the bond in the manner prescribed by it, and that the bond had been extended in accordance with its provisions, so as to show more specifically that the two employees whose dishonesty was alleged were included within the scope of the provisions of the bond at the time when the loss or losses complained of

occurred, and that the bond was then in force, did not add a new and distinct cause of action to that originally set out.

3. An itemized statement of the losses on account of which a recovery was sought was attached to the petition. Two of these items, other than those stricken by the court, appeared to be of a character not covered by the terms of the bond, and the general allegations of the petition were not sufficient to save them from being subject to the special demurrer. Accordingly, on demurrer, such items should have been stricken.

4. Where suit was brought on what was termed a fidelity schedule bond (though it does not appear in the record to have been a sealed instrument), and such bond recited that an employer desired indemnity in respect to certain employees, and continued: "Now, therefore, for and in consideration of a stipulated premium paid or agreed to be paid by the employer," the surety company "hereby covenants and agrees to and with the employer," etc.; and where an agreement to continue the bond in force recited that "in consideration of the payment of the annual premium charge" on a certain named day during each and every year, or within sixty days thereafter, the bond should continue in force for an indefinite term, these recitals imported a consideration; and copies being attached to the petition as amended, a general allegation in the petition that "in consideration of a certain premium duly paid by plaintiff to defendant" the latter executed the bond, was not subject to special demurrer.

5. In other respects the petition as amended was not subject to the demurrer.

JULY 12, 1916.

Action upon bond. Before Judge Park. Jasper superior court. February 16, 1915.

The Farmers State Bank of Sparks, Georgia, brought suit against the National Surety Company on a bond called in the petition a fidelity bond. Among the terms of this bond are the following: "Whereas Farmers State Bank, Sparks, Ga., (hereinafter designated the 'employer') has appointed to positions in the service of the employer that certain person or those certain persons (hereinafter designated 'employees') whose name or names appear in the schedule hereto attached, . . in respect of whom the employer requires indemnity of the kind and nature hereinafter provided; and whereas the employer may hereafter require like indemnity in respect of other persons (hereinafter included in the designation 'employees') in the employer's service: Now, therefore, for and in consideration of a stipulated premium paid or agreed to be paid by the employer," the surety company agrees "that it will, at the expiration of three months after proofs of loss shall have been furnished . . , pay to the employer the amount

of any loss or damage that shall happen to the employer, in respect of any funds, property, or estate belonging to or in the custody of the employer, through the dishonesty of any of the employees, or through any act of omission or commission of any of the employees, done or omitted in bad faith, and not through mere negligence, incompetency, or any error of judgment. . . There shall be no liability hereunder on the part of the company unless the act or default through which such loss may happen shall, in respect of the employees originally named in the schedule, occur on or after the 26th day of September A.D. 1911, and shall, in respect of any employee hereafter added to the schedule by notice and acceptance as hereinafter provided, occur on or after the date upon which his or her name shall have been added to the schedule, and shall, in respect of all employees, occur prior to or on the 25th day of September A.D. 1912, or prior to or on any other date to which this bond may be continued. There shall be no liability hereunder on the part of the company unless such loss or damage shall be discovered during such designated term, or within one year after the final expiry as determined by the term herein specified and any and all continuances of this bond, and within one year after the cancellation or termination of this bond, or of any engagement hereunder in respect of the employee causing a loss. The company's liability on account of any employee shall in no case exceed the amount set opposite his or her name in the schedule hereto attached, as such name and amount now appear or as they may be hereafter added to or changed upon the schedule in accordance with the provisions therefor hereinafter set forth. If the employer requires indemnity in respect of any employee other than those named, in the schedule hereto attached, or if the employer requires indemnity in respect of any employee in the schedule named in an amount larger or smaller than herein specified, the employer shall give the company written notice of the name of such employee and the amount for which the employer may desire the company to become bound for such employee in the required amount, [and the company] shall execute and deliver to the employer its written acceptance, specifying the amount for which and the date from which the company shall be bound in respect of such newly designated employee, and specifying, in respect of a change in the amount of indemnity, the new amount and the date from

which it shall be effective, it being agreed and understood that thereby such name or names and specifications shall be deemed to be added to the schedule hereto attached, and the obligations of the employer and the company in respect thereof shall be subject to all the provisions herein contained and in every way as though such name and specifications had formed part of the original schedule. . . So long as the company and the employer agree so to do, this bond may be continued in force from year to year, and in case of such continuance the company's liability in respect to the employees then in the employer's service and from [for?] whom the company may then be bound hereunder shall be the same as if this instrument had been originally written for a term including the period of such continuance." The bond was dated May 8, 1912.

The suit was brought in two counts. The first alleged in substance as follows: On May 8, 1912, "in consideration of a certain premium duly paid by the plaintiff to the defendant," the latter executed the bond. The employees named in the schedule attached to the bond and in the extension thereof, for whose conduct, misfeasance, and defalcation defendant became liable under the terms of the bond, were J. C. Wilson and Ashley Nesmith, the cashier and assistant cashier of the plaintiff. During the life of the bond and while it was in full force and effect the plaintiff sustained a loss of $1517.93 through the dishonesty of Wilson, its cashier, and through acts of omission or commission of said employee done or omitted in bad faith and not through negligence, incompetency, or error of judgment. An itemized bill of particulars or statement was attached as an exhibit and made a part of the petition. In regard to one item thereof amounting to $1000, dated December 5, 1912, it was alleged, that such sum was transmitted by the Citizens Bank of Valdosta to the plaintiff, and was received on December 6th by Wilson as the cashier of the plaintiff; that he failed to charge the item to cash on the books, and unlawfully and wrongfully appropriated it to his own use, and refused to account for it; and that the plaintiff has suffered a total loss of that amount. Notice and proof of loss were furnished, as required by the bond; and the defendant denied any liability and refused to pay the loss.

The second count was similar to the first, except that it alleged

that the $1000 was transmitted in currency by registered mail by the Citizens Bank of Valdosta to the plaintiff and received by Ashley Nesmith and appropriated to his own use. The exhibits attached to the petition showed that only Wilson was included in the schedule attached to the bond, so as to be covered by it as originally issued. Of the items in the bill of particulars all except one were dated after September 25, 1912.

The defendant demurred to the petition. The plaintiff amended it by alleging in substance as follows: Under the fourth article of the bond, the plaintiff, desiring indemnity in respect to another employee than Wilson, namely Nesmith, gave notice to the company of the amount for which it desired the company to become bound as to him ($3,000), and the company accepted this as provided in the bond on November 15, 1912. The required premium of $8.18 was paid by the plaintiff to one Spivey, the agent of the defendant at Monticello, Ga.; and this was for one year beginning on the date just stated. In accordance with the provisions of the bond, "and in consideration of the premium required by the defendant, which was duly paid" to Spivey the agent, the defendant extended the bond and delivered to the plaintiff its extension agreement, whereby the bond was extended for an indefinite period during each year that the plaintiff should pay the annual premium charged; and this having been done, the bond was extended for one year from September 26, 1912. The written extension contained the following provisions: "In consideration of the payment of the annual premium charge on the 26th day of September · during each and every year, or within sixty (60) days thereafter, that the bond hereinafter referred to shall continue in force, the National Surety Company hereby continues, for an indefinite term, beginning on the 26th day of September, 1912, its Fidelity Schedule Bond No. 657491 in favor of Farmers State Bank, Sparks, Ga., so as to cover, according to its terms and conditions, any act or default of any employee covered by said bond, committed after the date of said bond by any employee mentioned in the schedule attached to said bond at the date of the execution thereof, and any act or default committed after the date of the addition notice by any employee added to said schedule, as provided in said bond, and before the termination of said bond as therein provided, as to all employees covered thereby." Proofs of loss were sent in ac-

cordance with the terms of the bond. A copy of them was attached as an exhibit. The defendant acknowledged receipt of them. No objection was made to their sufficiency, except as to two items concerning overdrafts; and the defendant retained the proofs. The defendant referred the plaintiff to its adjuster, who was the general agent of the defendant for adjusting its claims. The plaintiff "took up the matter with him;" and he informed the plaintiff that he had fully investigated the claim and on behalf of the company denied liability. No point was made on the proofs of loss. The adjuster admitted that the bond was in force and covered Wilson and Nesmith, but contended that the loss was not covered by the terms of the bond, and that for this reason the company was not liable. The plaintiff forwarded an amended or supplementary claim. This was returned to the plaintiff. Copies of the claim and letter were attached. In regard to two items mentioned in the bill of particulars the following allegations were made: "Petitioner further shows that said item of November 26, 1912, of $315.00, and for the loss of which plaintiff contends that said defendant is liable under its said bond, arose in the following manner, to wit: The said J. C. Wilson for his own individual and private account, and without the knowledge and consent of plaintiff, had transferred of money on deposit with the Mechanics & Metals National Bank of New York, belonging to said plaintiff, the amount of $315.00 to Alexander & Company, and the said J. C. Wilson did not charge said amount to himself upon the books of said plaintiff, has failed to account for same, and still fails to so account, and unlawfully and wrongfully and fraudulently misappropriated same to his own use. Plaintiff further shows that said item of $29.45 of December 11, 1912, referred to in Exhibit B of plaintiff's petition, arose by reason of the fact that the said J. C. Wilson, cashier of the bank aforesaid, unlawfully, wrongfully, and fraudulently appropriated to his own use bills receivable of this plaintiff, and which were the property of this plaintiff, amounting to the sum of $29.45, and refuses and fails to account for same."

This amendment was allowed over the objection that it added a new cause of action. The defendant still insisted on its demurrer, which was overruled except as to two items in the bill of particulars, and it excepted.

*Hardeman, Jones, Park & Johnston* and *Harry S. Strozier,* for plaintiff in error.

LUMPKIN, J. (After stating the foregoing facts.)

1. A plaintiff may include in one petition several causes of action against the defendant, provided they are of the same character, that is, all sounding in tort, or all in contract. Civil Code (1910), § 5521. And if he does this by setting out the different causes of action in separate counts, he will not be compelled to elect on which count he will proceed. *Southern Ry. Co.* v. *Chambers,* 126 *Ga.* 404 (55 S. E. 37). The plaintiff may in different counts set out the same cause of action in various ways; and where the petition contains more than one count referring to the same transaction, but differing one from another in substantial particulars as to the details of such transaction, it is not bad for duplicity. *Gainesville etc. Ry. Co.* v. *Austin,* 122 *Ga.* 823, 825, 826 (50 S. E. 983). The allowance of the amendment showing that the contract of indemnity was made to include both the cashier and the assistant cashier of the plaintiff, and that the term had been extended in accordance with the provisions of the bond, will be considered presently. Assuming the bond to include both of these employees of the plaintiff, and that the loss was of a character covered by it, and occurred while it was in force, the fact that the plaintiff included two counts in his petition, alleging in one that a large item of the loss occurred through the misappropriation of the cashier, and in the other that it occurred through the misappropriation of the assistant cashier, did not render the petition demurrable on the ground of duplicity or inconsistency of causes of action. If suit should be brought against a railway company for a personal injury, and in one count it should be alleged that it was caused by the negligence of the engineer, and in another that it was caused by the negligence of the conductor, these counts would allege that the injury was caused by the conduct of different employees, but this would not render the petition demurrable. Indeed, this variation is the very reason for employing more than one count. In the present case, if the indemnity bond included losses occasioned by the different employees, and each should claim that the other was guilty of the misappropriation, the employer would not be compelled to elect which of the two should be believed, and risk his entire case upon the contingency of the jury believing the same

employee. If the loss existed, and resulted from the dishonesty of the one or the other, the action could be brought in separate counts, alleging in one that the loss resulted from the dishonesty of one of the employees, and in the other from the dishonesty of the other employee.

2. An amendment to the petition was allowed over the objection that it added a new and distinct cause of action. There was no error in this ruling. The original bond contained provisions for adding other employees to those who might be originally specified in the schedule as covered by the bond. It also contained a provision for the continuance of the bond in force for a longer time than that originally mentioned. The original petition alleged that the employees named in the schedule attached to the bond "and in the extension thereof," for whose conduct, misfeasance, and defalcation the defendant became liable under the terms of the bond, were Wilson, the cashier of the plaintiff, and Nesmith, the assistant cashier, and that during the life of the bond and while it was in full force and effect a loss occurred. In the first count the principal item of loss was alleged to have been brought about by the dishonesty of Wilson, the cashier; in the second through that of Nesmith, the assistant cashier. The schedule attached to the bond, as originally executed, mentioned only Wilson, the cashier, and in the bill of particulars attached to the petition all of the items except one bore date after the term named in the bond. The suit, however, was for a breach of the bond alleged to have occurred while it was in full force and applicable to both employees, with a reference to the schedule attached to it and "the extension" of it. Here were allegations referring to an extension of the bond to another employee than that first mentioned, and a time during which the bond was continued in force. The allegations originally made were imperfect, but they were elaborated by the amendment so as to set out distinctly the inclusion of Nesmith, the assistant cashier, as one of the employees covered by the terms of the bond, and likewise so as to show a continuance of the bond in force beyond the time first mentioned, in the manner provided in the instrument itself. This did not add a new and distinct cause of action, so as to be subject to objection on that ground. The case of *Mayor and Council of Brunswick* v. *Harvey,* 114 *Ga.* 733 (40 S. E. 754), is not in point.

It was there held that where a suit was brought upon a bond guaranteeing a city against the fraud and dishonesty of its treasurer, and the allegations of the petition clearly showed that the action was predicated upon the original bond only, an amendment seeking to recover upon two other bonds given subsequently for a like amount and purpose, and adopting by reference the terms of the original bond, was not allowable, although the petition alleged that the bond sued on had been renewed from time to time. It was declared that, the renewals being separate and distinct contracts, the amendment sought to add a new and distinct cause of action. There the amendment sought to include the renewals as separate and independent contracts, and to recover an amount upon each of the renewals as well as a certain amount upon the original bond, making in the aggregate much more than the sum guaranteed in the first bond. In the opinion it was said: "The renewals, being separate and distinct contracts and not declared on in the original petition (which contained no hint or intimation that they were intended to be declared on), could not be added by way of amendment." From what has been said it will be seen that the present case differs from that. Nor is this case in its facts like that of *Corporation of the London Assurance* v. *Paterson*, 106 *Ga.* 538 (32 S. E. 650). It is also unlike *Lamar* v. *Lamar, Taylor & Riley Drug Co.*, 118 *Ga.* 850 (45 S. E. 671), which involved entirely distinct and separate contracts. In the case at bar the question is not as to a proposed application of the statute of limitations, or like questions, but whether the amendment added a new and distinct cause of action to that set out, though perhaps imperfectly, in the original petition. See *Ellison* v. *Georgia Railroad Co.*, 87 *Ga.* 691 (13 S. E. 809).

3. The amendment elaborated somewhat the allegations in regard to two of the items set out in the bill of particulars, so as to show that the losses therein mentioned arose from the dishonesty of Wilson. Two other items were stated as follows:

"Oct. 16th, 1912. To draft drawn by J. Y. Bridges. Payment refused, draft worthless, cash short.....................21.50.

"Sept. 21st, 1912. To draft of W. F. Bozeman, claimed to have been sent to Cumberland Valley National Bank, Nashville, Tenn., for collection. They claim no record. Cash short.......90.00."

As to these items there were no other explanations. Although

there were general allegations in one count of the petition that the defendant was indebted to the plaintiff the sum of $1517.93 (the aggregate of the bill of particulars), the amount of loss sustained through the dishonesty of Wilson and through acts done or omitted by him in bad faith, and like allegations in the other count charging the dishonesty to Nesmith, yet reference was made to an attached itemized statement of the loss suffered. The two items above set out, and referred to as part of the petition, failed to show that the losses were of the character covered by the bond; and they should have been stricken on demurrer. Direction is given that they be stricken.

4. A consideration is essential to a contract which the law will enforce. In some cases a consideration will be presumed, and an averment to the contrary will not be received. Such are generally contracts under seal, and negotiable instruments alleging a consideration on their face, in the hands of innocent holders without notice, who have received the same before dishonor. Civil Code (1910), § 4241. A negotiable note may import prima facie a consideration, though not in the hands of a taker before due. In some States, by statute, a written contract imports a consideration, at least prima facie. Ordinarily, in a suit on an executory simple contract, a consideration must be alleged, and it is not sufficient to allege generally that there is a consideration, or a valuable consideration, but the consideration must be alleged with reasonable explicitness. A general allegation of a valuable consideration may be sufficient to withstand a general demurrer, but not ordinarily a special demurrer attacking the lack of specification. But in some jurisdictions a motion has taken the place of a special demurrer. In *Oslin* v. *Telford,* 108 *Ga.* 803 (34 S. E. 168), there is a general statement that, in a suit on a written contract, when the petition alleges that the contract was made "upon sufficient consideration," such allegation of consideration is sufficient, if other proper averments are made, to show a cause of action. But this is immediately followed by the statement that proper practice requires that an issue as to whether the petition contains sufficient allegations to show on its face a right of recovery be raised by demurrer; and it was held that the demurrer which was actually filed could not be considered, for reasons stated. So that this was not a ruling that such an allegation was not subject to special demurrer. See also

*Pattillo* v. *Jones,* 113 *Ga.* 330, 334 (38 S. E. 745). Sometimes a contract on its face shows a sufficient consideration; and in a suit based on such a contract, if it be set out, no other consideration need be averred. Wood *v.* Knight, 35 App. Div. 21 (54 N. Y. Supp. 466); Leonard *v.* Sweitzer, 16 Ohio, 1; Jerome *v.* Whitney, 7 Johns. 321; Camp *v.* Scott, 47 Conn. 366, 378. In the instant case the suit is on an instrument called an indemnity bond. As the copy appears in the record, it recites a seal, but shows none. Hence it can not be treated as a sealed instrument. Civil Code (1910), § 4359; *Brooks* v. *Kiser,* 69 *Ga.* 762; *Willhelms* v. *Partoine,* 72 *Ga.* 898; *Ridley* v. *Hightower,* 112 *Ga.* 476, 479 (37 S. E. 733). Nevertheless the copy attached to the petition recites, that whereas the employer has appointed to positions in its service a certain person or persons whose name or names appear in the schedule attached, in respect to whom the employer desires indemnity, and whereas the employer may hereafter require like indemnity in respect to other persons in its service, "now, therefore, for and in consideration of a stipulated premium paid or agreed to be paid by the employer," the surety company "hereby covenants and agrees to and with the employer," etc. This allegation was specially demurred to on the ground that it was not a sufficient averment of the payment of the premium or its amount, or how, when, or to whom paid, or what term it covered. The amendment to the petition alleged that the plaintiff paid to a named agent of the defendant the premium of $8.18 required of it for entering into the indemnity covering the newly designated employee, and that such premium thus paid was for the year beginning the 15th day of November, 1912. Attached to the amendment was also a copy of an agreement by which the indemnity bond was extended. This recited that "in consideration of the payment of the annual premium charge on the 26th day of September during each and every year, or within sixty (60) days thereafter, that the bond hereinafter referred to shall continue in force, the National Surety Company hereby continues, for an indefinite term, beginning on the 26th day of September, 1912, its fidelity schedule bond," etc. These recitals in the bond, and its continuance, sufficiently import a consideration; and when the allegation as to the payment of a stipulated premium is taken in connection with the instrument on which the suit was based, and of which a copy was attached, it was not subject to the demurrer.

5. Except as herein stated, there was no error in overruling the demurrer.

*Judgment affirmed, with direction. All the Justices concur.*