### 15908.  KRAFT v. ROWLAND & ROWLAND.

1. Questions not referred to in the brief or argument of counsel for the plaintiff in error will be treated· as. abandoned.

2. A suit to recover for services, rendered as under a contract of employment in which the amount to be paid *was stipulated*, may be amended by the addition of a new count predicated upon the same transaction and seeking a recovery of the value of the services as under a contract of employment in which the amount to be paid *was not stipulated*.

3. In this action by a real-estate broker, containing a count for the recovery of the reasonable value of services alleged to have rendered, the evidence having informed the jury as to the character and extent of the services rendered and as to all the attendant circumstances, and there being some evidence as to what were the common or ordinary charges among real-estate brokers for services of like character in the same community, it can not be said that there was nothing on which the jury might base a verdict in favor of the plaintiff.

4. Where an owner of property engages the services of a broker to obtain an agreement from another to buy it at a price stipulated, a part of. which is' to be paid in cash, representing the price of the owner's equity, and the remainder of which is to be satisfied by the purchaser's assuming an outstanding loan upon the property, previously obtained by the owner, and where the broker, after compliance with his agreement, brings a suit against the owner to recover the reasonable value of his services, the jury, in determining the amount to be awarded, may take into consideration the price of the entire property, and are not confined solely to a consideration of the price of the owner's equity.

5. Where an owner of property, without any agreement as to the compensation he will pay for the services, employs a broker to procure from a designated person an obligation in writing whereby that person is to become bound to purchase the property and the owner is to become obligated to sell it, at. the price and on the terms stipulated by the instrument, and where.the agent fully complies with the terms of his employment, but the owner, without any fault on the part of the agent or the purchaser, refuses to make the sale, the broker may re-

cover the reasonable value of his services as upon a quantum meruit, under the law of implied contract.

DECIDED APRIL 11, 1925. REHEARING DENIED JUNE 15, 1925.

Complaint; from city court of Savannah—Judge Freeman. August 22, 1924.

Application for certiorari was made to the Supreme Court.

Rowland & Rowland, a firm of real-estate brokers, brought suit against Samuel Kraft for $1000. They alleged that the defendant agreed and undertook to pay them this sum as commissions if they would sell for him certain described property in the city of Savannah, and that in accordance with the terms of their agreement with him they procured a purchaser for the property upon conditions agreed to by the defendant as shown in a certain "sale ticket," a copy of which was attached to the complaint; that after they had procured the written obligation of another person to buy, the defendant failed and refused to sell, although the other person was ready, willing, and able to buy, and duly tendered the initial cash payment in accordance with the defendant's terms of sale; and that the defendant failed and refused to pay to the plaintiffs their commissions as promised. During the trial of the case the plaintiffs, with the court's leave, amended their petition by adding a new count, in which it was alleged that "under an employment" by the defendant the plaintiffs procured a purchaser for the property (describing it as before), in accordance with the terms and conditions agreed to by the defendant and the person whom they procured as a purchaser, as set out in a contract drawn in conformity to the defendant's direction, being the "sale ticket" already referred to; that the plaintiffs procured the signature of the other person to the "sale ticket," but that "the defendant failed and refused to execute said contract of sale," and that although the plaintiffs fully performed "their contract" to obtain a purchaser for the property, ready, willing, and able to buy, the defendant failed and refused to pay the plaintiffs "the reasonable value of their services aforesaid, to wit, the sum of $1000." The amendment appears to have been offered because the plaintiffs' evidence failed to show that any particular or certain sum was agreed upon as commissions. The amendment was allowed over the objection that it set forth a new and distinct cause of action. A verdict was found for the plaintiffs in the sum of $750. The

defendant's motion for a new trial was overruled, and he excepted.

*Lawrence & Abrahams, David S. Atkinson,* for plaintiff in error.

*McIntire, Walsh & Bernstein,* contra.

BELL, J. (After stating the foregoing facts.)

1. There was a demurrer to the original petition, and exceptions pendente lite were duly filed to the action of the court in overruling it. Although in the bill of exceptions error is assigned upon the exceptions pendente lite, there is no reference thereto in the brief of counsel for the plaintiff in error, and these exceptions will be treated as abandoned. The only grounds for reversal insisted upon are those referred to below.

2. Did the court err in allowing the amendment? The original petition was a suit for the recovery of the value of services rendered by the plaintiffs under a contract of employment *in which the amount to be paid was stipulated.* In the amendment it was alleged that the plaintiffs were acting "under an employment" with the defendant, and that they had completed "their contract." In view of this and of the other language used, the amendment is construed as seeking a recovery for the value of services rendered by the plaintiffs under a conventional agreement or contract whereby the plaintiffs were employed to render the services, *but in which the amount to be paid was not stipulated. Wilson* v. *Lattimore,* 135 *Ga.* 469 (1) ; *Cooney* v. *Foote,* 15 *Ga. App.* 455 (3). It does not appear in the amendment that there was any express agreement to pay even the reasonable value of the services. An obligation, however, to pay whatever they were worth would be implied. Civil Code (1910), § 5513.

It was held in *Gray* v. *Bass,* 42 *Ga.* 270 (1), that a count on an implied contract may be joined with one on a special contract, and that, too, by amendment. See also *Cox* v. *Georgia R. Co.,* 139 *Ga.* 532 ; *Bright* v. *Central City Street R. Co.,* 88 *Ga.* 535 ; *Barlow Guano Co.* v. *Adair,* 29 *Ga. App.* 644 (1). On the other hand, it seems to be the rule in this State that a suit on an account or a quantum meruit can not be converted by amendment into a suit on an express contract. *Pittman* v. *Hodges,* 13 *Ga. App.* 25 : *Jones* v. *Schachter,* 31 *Ga. App.* 709 (3), and citations.

While the plaintiffs in their amendment, as in their original petition, alleged an agreement for their employment, they relied in the amendment solely upon the implication of the law to establish

the defendant's promise to pay. See *Jackson* v. *Buice*, 132 *Ga.*
51 (1). There appears no other substantial difference between the
original suit and the amendment. See the italics above. The
cause of action as first laid did not subsist alone in the agreement
between the parties, but arose from the combined facts of the con-
tract, the rendition of the services, and the defendant's refusal to
pay. *City of Columbus* v. *Anglin*, 120 *Ga.* 785 (5). If, as we
have seen, a suit upon an express contract may be amended by the
addition of a count upon an implied contract, *a fortiori* an amend-
ment would be permissible where it invoked the law of implied con-
tract only for the purpose of filling up a gap in an express con-
tract. The amendment did not seek to add new terms to the agree-
ment as set out in the original petition, but relies merely upon the
law to fill a vacuum in regard to the matter of compensation, which
appeared in the original suit to have been covered by express under-
standing. In other words, it was declared in the suit as originally
framed that the parties had agreed upon two matters: firstly, that
the plaintiffs should perform for the defendant certain services;
and secondly, that upon the performance thereof the defendant
would pay to the plaintiffs a certain sum of money as their com-
pensation; while in the amendment it is shown that the parties
agreed upon one matter only, namely, that the plaintiffs would
render the services. Thus far the new count is substantially
identical with the old; and as to the second matter it does not
substitute a new agreement, but relies upon the law to supply
one where none had been made by the parties themselves. This
we think distinguishes the case at bar from the case of *Lamar* v.
*Lamar*, 118 *Ga.* 850, wherein the Supreme Court held that in a
suit for a breach of contract the petition can not be amended by
abandoning the contract first alleged and setting up another and
different contract. In that case the plaintiff sought by amendment
to substitute certain express terms of the agreement for other ex-
press terms set out in the original petition. The case was not one
in which the plaintiff merely sought by amendment to supply a
hiatus in the agreement through the aid of the law.

Permission was given in the *Anglin* case for the review of all the
Georgia cases upon the question of when an amendment would
add a new and distinct cause of action, and a number of cases
were overruled in so far as they were in conflict with the decision

then rendered, including one of the cases (*Cox* v. *Murphy,* 82 *Ga.* 623). cited as authority in the *Lamar* case, and including "also so much of any other case as" conflicted with the ruling then announced. We take it that the *Lamar* case was not among those overruled, since it has been cited with approval in one of the Supreme Court's later decisions (*Muller Bank Fixture Co.* v. *Georgia &c. Association,* 143 *Ga.* 940 (1)), and distinguished in another. *National Surety Co.* v. *Farmers Bank,* 145 *Ga.* 461 (2), 469. It has also been cited twice by this court since the decision in the *Anglin* case: *McKenzie* v. *Miller,* 6 *Ga. App.* 828 (2); *Mauldin* v. *Gainey,* 15 *Ga. App.* 353 (2). But we do not think that the *Lamar* case is authority in the present case, for the reason that the facts of the two cases are essentially different.

"Where there is a special contract which has been performed on one side, and there is nothing left to be performed but payment on the other, a recovery can be had either upon the contract or upon a general *indebitatus assumpsit* or *quantum meruit.*" *Hill* v. *Balkcom,* 79 *Ga.* 444; *Baker Lumber Co.* v. *Atlantic Mill & Lumber Co.,* 24 *Ga. App.* 749 (1); *Myers* v. *Aarons,* 30 *Ga. App.* 750 (1).

It was further ruled in the *Anglin* case that "So long as the facts added by the amendment, however different they may be from those alleged in the original petition, show substantially the same wrong in respect to the same transaction, the amendment is not objectionable as adding a new and distinct cause of action." In that case the court reaffirmed the doctrine of *Maxwell* v. *Harrison,* 8 *Ga.* 61: "The true criterion for determining whether an amendment is admissible we take to be this—whether the amendment proposed is another cause of controversy, or whether it is the same contract or injury, and a mere permission to lay it in a manner which the plaintiff considers will best correspond with the nature of his complaint, and with his proof, and the merits of his case. For, while the plaintiff can not introduce an entirely new cause of action, he may nevertheless add a new count, substantially different from the declaration, provided he adheres to the original cause of action."

We are of opinion that the amendment clearly complained of the same wrong or cause of controversy as laid in the original petition, and that it was not objectionable as setting forth a new and

distinct cause of action. Compare *Sweat* v. *Hendley,* 123 *Ga.* 332 (1); in re Cormick, 100 Neb. 669 (160 N. W. 989, L. R. A. 1917D, 265); 31 Cyc. 430. This conclusion is not in conflict with anything ruled in *Walker* v. *O'Neal,* 21 *Ga. App.* 563 (2), or in *Alford* v. *Davis,* 21 *Ga. App.* 820 (4). In the *Walker* case it was held that in a suit upon an express contract for commissions in a fixed amount it was error to admit evidence of what the services were reasonably worth; but this was not to decide that the petition might not have been amended by the addition of a count upon a quantum meruit, which if done would have rendered the evidence admissible. In the *Alford* case it was held merely that in a suit for damages for the breach of an express contract the plaintiff can not recover upon a quantum meruit; so that neither in that case was there any ruling as to whether a count upon a quantum meruit might have been added to the petition by amendment.

We conclude that in the present case the court did not err in allowing the proffered amendment.

3. The verdict was founded upon the amendment or second count. It is insisted that the verdict is not supported, because of the failure of the evidence to establish the value of the services rendered. It appears that the defendant had previously listed the property for sale with the plaintiffs for a limited time, at a valuation of $55,000. The time expired without a sale, and the present action is to recover for services under a subsequent agreement by which the plaintiffs were employed to procure a purchaser for the property at a valuation of $42,000.

A witness for the plaintiffs, who represented them in the dealings with the defendant, testified that the exact commission on a sale at the latter valuation would have been $1175, but that in the negotiations, by which the plaintiff was seeking to obtain the signature of the defendant to a binding agreement of purchase and sale already signed by the purchaser, the defendant raised objection to this amount. The witness further testified: "I told [the defendant] Rowland & Rowland might accept $1000. He told me to bring him that in writing. I did. The paper is the agreement [referring to a document in evidence]. I took it to him and showed it to him. He still wanted to balk on the commission; he talked of further reduction on the commissions, and asked me

if they would not take $750 or $500. . . There was nothing in the contract about what our commissions would be. There are established rules or established commissions which are expressly understood. . . Mr. Kraft asked me what commission we would accept, . . or what commission we expected, and I told him what the regular commissions were,—$1175; and he began to talk like he would have to have a compromise on that, and, after he talked it over, I said, 'Well, Rowland & Rowland may take $1000.' He said, 'Bring me that in writing.' The $1175 is figured on $42,000."

Assuming that the evidence of this witness should be construed not as expressing the witness's opinion as to the value of the services, but as undertaking merely to say what the commissions should amount to under the rules and customs of local real-estate brokers, it was not without some probative value. In *Camilla Cotton Oil Co.* v. *Walker,* 21 *Ga. App.* 603 (1), which was a suit involving a diminution of the plaintiff's earning capacity as a machinist of three years' experience, it was held not error to allow the plaintiff to testify "as to what [were] the usual and customary wages of an expert machinist in this community at that kind of business." In *Dillard* v. *Hollzendorf,* 140 *Ga.* 17, in which the value of the services of a physician was a pertinent matter of inquiry, the Supreme Court held: "Testimony that physicians in the locality of the venue of the suit were accustomed to charge certain fees for visits to patients was not inadmissible on the ground that such testimony was irrelevant and immaterial; no point being made that it did not appear that the charges in the two localities were similar." "Prices at which similar articles are sold" may be considered as a circumstance in determining the value of particular property. *Morrow Transfer Co.* v. *Robinson,* 8 *Ga. App.* 409. There is no conflict between any of the rulings last referred to and the ruling in *Western & Atlantic R. Co.* v. *Calhoun,* 104 *Ga.* 384 (1). Value, as any other matter to be proved, may be shown circumstantially or inferentially as well as directly or positively. *Ayers* v. *State,* 3 *Ga. App.* 305 (4) ; *Farm Products Co.* v. *Eubanks,* 29 *Ga. App.* 604. By the other evidence the jury were fully informed as to the nature and extent of the services which the plaintiffs claimed to have rendered, and as to all the attendant circumstances. An opinion by the witness as to the value of the service,

if given, would not have been conclusive upon the jury. They might have acted independently thereof or in opposition thereto by applying to the case their own experience, or by "exercising their 'own knowledge and ideas' on the subject." Questions of value are peculiarly for the determination of the jury, where there is any data in evidence upon which they may legitimately reach a conclusion; and we can not hold as a matter of law that there was no data before them in the instant case upon which they might predicate a finding. See *Baker* v. *Richmond City Mill Works*, 105 *Ga.* 225 (2) ; *Sweat* v. *Sweat*, 123 *Ga.* 801; *Georgia Railway Co.* v. *Tompkins*, 138 *Ga.* 596 (8) ; *Daniel* v. *McRee*, 31 *Ga. App.* 210 (1).

4.  The plaintiffs alleged that the terms of the sale were that the purchaser should pay for the property $42,000, of which $12,-000 should be in cash and of which $30,000 should be in the assumption by the purchaser of an outstanding loan on the property, obtained by the defendant owner, in the sum of $30,000; and the evidence tended to establish these allegations. In these circumstances it is insisted by the plaintiff in error that a recovery of commissions in the sum of $750 was unauthorized; the contention being that the commission should be calculated only upon the valuation of the defendant's equity, and that, since this was only $12,000, the commissions awarded by the verdict were excessive.

Even if the sale were considered as involving but $12,000, we should hardly be able to say as a matter of law that the commissions were excessive. But the jury were not bound, even if they would have been authorized, to consider only the amount which the defendant required to be paid to him in cash as the valuation of his equity, in determining the value of the services rendered. Under the terms of the sale, which the plaintiffs contended the defendant had agreed to, the assumption of the loan of $30,000 had as much bearing upon the magnitude of the transaction as if the defendant had stipulated for the payment of the same in cash. If the sale had been made the defendant would have received the equivalent of $42,000, in that as between him and the purchaser he not only would have received $12,000 in cash but would have been relieved of a debt in the sum of $30,000; so that in determining the amount of the commissions justly earned it was clearly the right, if not the duty, of the jury to consider the transaction as involving property of the value of $42,000.

5. The last question raised by the plaintiff in error is, "whether plaintiff could recover commissions on quantum meruit where the parties contemplated that the sale should not be consummated until the defendant signed the agreement, and the defendant refused to sign the agreement because there was no specific agreement with reference to the payment of commissions upon the sale." We can not concur in the suggestion by the learned counsel that this question is not settled by our former decision in the case, wherein we held: "Where the owner of certain property employs an agent at an agreed contingent price to procure from a designated person an obligation in writing, previously approved by the owner, whereby that person is to become bound to purchase the property and the owner is to become obligated to sell it at the price and on the terms stipulated by the instrument, and where the agent fully complies with the terms of his employment by forthwith presenting to the owner for his signature an instrument signed by the prospective purchaser, which instrument is in meaning precisely the same as the agreement previously approved by the owner, the agent is not to be deprived of his earned commission because of the fact that the form of the instrument contemplates that it is to be signed by the owner as well as by the purchaser, and the owner, without any fault on the part of the agent or the purchaser, fails to give binding effect to the contract of purchase and sale, by refusing to sign the proffered instrument." 31 *Ga. App.* 593. At the time of this ruling the petition had not been amended, and sought a recovery on the basis of an "agreed price" for the plaintiffs' services. We see no reason why the rule should be different where the plaintiff seeks a recovery of the reasonable value of his services under the law of implied contract, as was done in the amendment or second count. It would seem that it might possibly apply with even greater force in the latter instance, it appearing that the controversy with respect to the commissions arose after the plaintiffs had complied with the terms of their employment by procuring an actual binding agreement to purchase upon terms which the defendant had stipulated. *Hill* v. *Balkcom,* 79 *Ga.* 444; *Roberson* v. *Allen,* 7 *Ga. App.* 142; *Perdue* v. *Cason,* 22 *Ga. App.* 294 (1); *Stephens* v. *Fulford,* 153 *Ga.* 637 (1).

The court did not err in refusing a new trial.

*Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*