### 44495. KENNEY v. CLARK.

DEEN, Judge. 1. " 'Inclusio unius, exclusio alterius' is a rule as old as the civil law of the Romans, and as sensible as it is venerable." *Atlanta Street R. Co. v. City of Atlanta,* 66

Ga. 104, 108. "The general rule of construction applicable to all writings, constitutions, statutes, contracts, and charters, and even to ordinary conversations, is this: that general and unlimited terms are restrained and limited by particular recitals, when used in connection with them." *McCann v. Glynn Lumber Co.*, 199 Ga. 669, 677 (34 SE2d 839); *Torrance v. McDougald*, 12 Ga. 526 (2). Applying these rules it was held in *Sovereign Camp W. O. W. v. Heflin*, 188 Ga. 234 (3) (3 SE2d 559) that where an insurer in drawing a contract chose not to rely on the general rules of estoppel, but has stipulated that a particular act (acceptance of a designated late insurance premium) will *not* operate as an estoppel, the proper inference in construing the contract is that payment of other premiums not so included *will* operate as an estoppel. This accords with the rule of construction that the general is limited by the particular, and where a contract recites a specific time for the performance of an act this recital will be given effect although contrary to the general custom of dealing.

2. (a) "A real estate broker does not earn a commission, absent other facts . . . for a sale made after the termination of his agency." *Schaffer v. Padgett*, 107 Ga. App. 861 (1) (131 SE2d 796). "If no time limit is fixed in a contract authorizing an agent to sell real estate, then, under the law, he has a reasonable time within which to do so; and what is a reasonable time is to be determined by the jury." *Wood v. Planzer*, 73 Ga. App. 731 (1b) (37 SE2d 813); *Thornton v. Lewis*, 106 Ga. App. 328, 331 (126 SE2d 869). If the broker is the procuring cause of the sale the general rule is that he is entitled to his commission even though the sale was concluded by the owner, and even though there are slight differences between the sale as consummated and the terms of the listing contract. *Lundin v. Kuniansky*, 107 Ga. App. 774 (131 SE2d 219); *Ellis v. Von Kamp*, 100 Ga. App. 60 (110 SE2d 97); *Hegidio v. Catron*, 93 Ga. App. 131 (91 SE2d 107); *Spence v. Walker*, 92 Ga. App. 609 (89 SE2d 668). An exception occurs where an owner lists property for sale with a broker, the broker procures a prospect, but the sale is not consummated and the parties in good faith break off negotiations and abandon all idea of the trade. In such event the broker is not the procuring cause of the ultimate sale and is not entitled to a commission. *Crutchfield v. Wes-*

18

*tern Elec. Co.,* 66 Ga. App. 161 (1) (17 SE2d 246). Obviously, where such a situation is presented and there is no contract provision otherwise limiting the rights of the parties, a jury question frequently arises on the good faith of the persons involved.

(b) The exclusive listing contract between the defendant owner and the plaintiff real estate broker in this action provided in part: "I hereby give and grant to you for a period of 2 months from the date of this instrument the exclusive right and authority to sell the property hereinafter described for the price and upon the terms hereinafter set forth. I hereby further agree [the standard commission] whether such sale be made by you or by me or by any other person acting for me or in my behalf . . . or if the property is afterwards sold within 3 months from the termination of this agency to a purchaser to whom it was submitted by you during the continuance of said agency, and whose name or names have been disclosed to me in writing during said agency." Applying the law set out in the first two headnotes to the construction of this clause, there can be no doubt but that the parties sought to contract specifically against the contingency of the owner selling to a prospect who had in the first instance been procured by the broker with the knowledge of the owner, and to whom the owner has sold directly either during or after the termination of the agency. There was a meeting of the minds that if such a situation occurred within three months of the termination of the agency the owner would be liable to the broker for commissions, which provision precludes the owner from proving, as was done in the *Crutchfield* case, supra, that the negotiations had been abandoned in good faith and that the parties had thereafter entered into a new contract of which the broker was not the procuring cause. Three months is a reasonable time, and here the parties have fixed by agreement the length of time *after the termination of the agency* during which the broker has a right to insist upon his commission. The express provision for liability within the time limited implies its exclusion thereafter.

Accordingly where, as here, under an exclusive real estate brokerage listing contract providing for the sale of the owner's property for $32,000 entered into on May 17, 1966, a prospect was procured; a sale contract in the sum of

$30,000 was signed by the parties on June 9 and $500 was paid by the purchaser to the broker as earnest money, but afterward the contract was rescinded and the earnest money returned, a sale by the owner to the purchaser on November 17, 1966, under a contract dated October 25, for a price of $30,650 was not covered under the specific terms of the listing contract, and the owner was not liable for commissions.

3. It is contended, however, that there is some evidence that the agreement was in fact made prior to October 17 (the expiration of the 2-month agency agreement plus the 3-month inhibition against selling direct to a prospect procured by the broker) in that the seller gave the purchaser a check for $500 on October 11. Both parties, however, testified that this check was in repayment of a loan. There is some dispute as to whether the owner had lent the purchaser the $500 down payment which had been deposited with and later returned by the broker, but there is no dispute that at that time the seller had also lent the purchaser $5,000, secured by a loan deed on the home of the real estate agent involved, and which the buyer had deposited in his own bank account and used in financial statements for the purpose of procuring a loan with which to purchase the property; also that the real estate broker had attempted unsuccessfully to procure the purchase money from two lending institutions and that these efforts had been unsuccessful at the time negotiations for the purchase broke down. There is also evidence that on October 18 the purchaser stated to a third party that he planned to purchase a home on Sewell Road (where the house was in fact located). Neither of these facts constitutes evidence that the house was sold within 3 months of the termination of the agency or that any binding agreement to make the sale took place within this period. Since the contract by its own terms eliminated sales after October 17, 1966, whether made to a person procured by the broker or not, the trial court erred in entering up judgment for the plaintiff seeking to collect a commission on the sale.

*Judgment reversed. Bell, P. J., and Eberhardt, J., concur.*

ARGUED MAY 29, 1969—DECIDED JULY 2, 1969.

*Schwall & Heuett, Emory Schwall,* for appellant.
*Lipshutz, Macey, Zusmann & Sikes, Martin M. Pollock,* for appellee.