## 52820. MARTIN et al. v. HENDRIX, WADDELL, MARTIN & COMPANY et al.

MCMURRAY, Judge.
Robert C. Martin was a licensed real estate salesman employed by Hendrix, Waddell, Martin & Co., a real estate brokerage firm. Martin was president, director and a stockholder of said corporation. James Hendrix was the principal broker, a vice president and director.

In March or April of 1973, Elliott Waddell joined the firm as associate broker, director, vice president and stockholder. Commissions earned in the business were to be paid as follows: 30% to the corporation, 15% to the listing agent, and 55% to the selling agent. The stockholders' interest in the corporation were: Martin 1/3; Hendrix 1/3; and Waddell 1/3.

Shortly after Waddell joined the firm Martin prevailed upon him to secure a listing on real estate, here designated as the DuBose-Waddell property, from the

owners (two sisters) through their agent, Beverly M. DuBose, Jr. — the owners being his wife, Frances Woodruff DuBose, and Virginia Woodruff Waddell, his sister-in-law. Waddell is also the brother-in-law of Virginia Woodruff Waddell. An oral listing was obtained in which the owners expected to receive a net sales price of $2,850,000 with any excess in the total sales price to be paid as a real estate sales commission.

Martin first contacted Southern Realty of Athens, Inc., which gave him a written offer to present to the owners to buy the property for $3,250,000. This contract was rejected by the owners because of purchaser's financial reputation and because it was a speculative firm.

Martin then produced another buyer, DeBoer Resources Corporation, which presented an offer to Martin to buy the property for a total sales price of $2,500 per acre, or approximately $3,090,000. Three days later DeBoer presented another offer at $2,630 an acre, or slightly more than $3,250,000 for submission to the owners. Both of these contracts were for cash at closing, real estate commissions to be paid by the owners. Neither of these contracts was executed by the sellers, but both were in excess of the net sales price that they had requested of $2,850,000.

After this second contract was tendered, the owners and DeBoer began negotiating directly with each other. On August 17, 1973, they entered into two exchange agreements (two contracts representing the one-half undivided interest owned in the property by each sister) whereby DeBoer was to buy with a purchase price at closing of $3,000,000. Pursuant to these agreements any real estate commissions due were to be the obligation of the purchaser (DeBoer). On September 18, 1973, prior to the owners' delivery of the executed documents, Martin, as president of the firm, executed a release by the firm in favor of the owners of the property of any claims to brokers commissions. Contemporaneously with this signing of the release by the firm, Martin, as president of the firm, agreed in writing that the brokerage firm would accept a 6% commission of $180,000 in full payment and satisfaction of the real estate commission earned in this

transaction to be due and payable *only in the event the sale was consummated by DeBoer*. The sellers were likewise released in consideration of this figure as a definite earned commission.

On January 29, 1974, Martin resigned as an officer, director and employee of the firm, although still a stockholder. Subsequently, the August 17 contract between the owners and DeBoer was renegotiated to increase the sales price to $3,600,000 and convert the transaction from a cash deal to a terms contract. On September 10, 1974, nine months after Martin's resignation, Hendrix and Waddell, as remaining officers of the corporation, agreed to accept an increased commission on a pay out basis parallel to the pay out of the purchase price to the sellers. The deferred payment situation called for only a payment at closing of $360,000 with the balance of a now increased sales price being paid over a period of years. The original amount of $180,000 commission to be paid at closing would have left only $180,000 to be divided between the two sellers, and this was unacceptable to them. The deferred payment method resulted. Martin, as the selling agent, would have been entitled to a major portion of the commission to be received. There seems to have been considerable discussion amongst the stockholders, officers and agents of the real estate brokerage firm with reference to the splitting of the commission.

DeBoer Resources Corporation continued to get into deeper and deeper financial difficulty, and eventually, the deal fell through completely.

Thereafter, Martin, individually and on behalf of himself and all other stockholders, brought an action in five counts which he designates as a derivative action against one or more of the defendants, claiming commissions owed to plaintiff and the company. Count 1 sought judgment in the sum of $400,000 for commissions earned against the defendant owners, Frances Woodruff DuBose and Virginia Woodruff Waddell; Count 2 sought a quantum meruit judgment for $400,000 against the owners as the reasonable value of the services rendered (these two counts involved the first transaction which was never consummated); Count 3 sought a judgment of

$240,000 for commissions earned on the listing agreement as to the next prospective purchaser; and Count 4 was in quantum meruit for the reasonable value of the services rendered to the owners, likewise for $240,000. Count 5 alleged a conspiracy between the defendants Hendrix, Waddell, the brokerage firm corporation, DeBoer as purchaser, Beverly M. DuBose, Jr., as agent of the sellers, and the two sisters, as the owners of the property as sellers, contending that they conspired to avoid the payment to this plaintiff of his portion of the real estate commission due on said sale or to delay and defer the same over a period of years to his great detriment and harm. The prayer in separate paragraphs sought various judgments in the amounts of $400,000, $240,000, and $180,000, as well as reasonable attorney fees and expenses of litigation and $25,000 as punitive damages for the wilful, wanton and malicious attempt by defendants to deprive the plaintiff of payment for his services and to deter defendants from such conduct in the future.

Defendants were duly served and filed their various answers, defenses, cross claims and counterclaims. After extensive discovery, DeBoer Resources Corporation moved for summary judgment and Beverly M. DuBose, Jr., Frances Woodruff DuBose and Virginia Woodruff Waddell also filed their motion for summary judgment. Thereafter, the defendant who had not previously moved for summary judgment, made an oral motion to dismiss which by stipulation was treated as motion for summary judgment to be disposed of with the other motions. The motion of the defendant DeBoer was granted on all counts and the other defendants' motions were granted as to Counts 3, 4 and 5. Plaintiff appeals. *Held:*

1. Ordinarily, when one renders services valuable to another, if the latter accepts, a promise is implied to pay the reasonable value of said services. Code § 3-107; *Kraft v. Rowland & Rowland,* 33 Ga. App. 806 (2) (128 SE 812); *Hendrix v. Crosby,* 76 Ga. App. 191, 195 (45 SE2d 448). But a real estate broker, to earn his commission, must either have sold the property, or was the procuring cause of said sale. *Hendrix v. Crosby,* supra. Here, no sale occurred at all. But if the broker, during the agency and

having a firm contract to sell according to terms, finds a purchaser, ready, willing and able to buy and who offers to buy on the terms stipulated by the owner, then in that event, the broker's commissions are earned. Code § 4-213. See *Birchmore v. Upchurch,* 78 Ga. App. 233 (50 SE2d 857); *Payne v. Ponder,* 139 Ga. 283 (77 SE 32).

2. Here, plaintiff, as president of the brokerage corporation, insofar as Counts 3, 4 and 5 of this petition, executed a release of the sellers and thereafter agreed to look to a prospective purchaser (DeBoer) for real estate commissions. This release states that the real estate commission was to be derived from the purchaser and the sellers (DuBose-Waddell) released "from any and all liability for the payment of any real estate commissions, finders' fees or other fees for services rendered, if any, in negotiating" the contract with the purchaser. See *Hewlett v. Almand,* 25 Ga. App. 346 (103 SE 173); *Henslee v. Lynes Mtg. Co.,* 132 Ga. App. 711 (1) (209 SE2d 78).

3. The agreements executed at the time of the novation as to commissions were in the form of a release and a letter offer accepted by the brokerage corporation. The plaintiff, as president, executed the agreement to accept $180,000 at closing. It clearly states the real estate commission would be "due and payable only in the event the sale is consummated." See *Hyams v. Miller,* 71 Ga. 608 (b); *Ragsdale v. Smith,* 110 Ga. App. 485 (1) (138 SE2d 916).

4. Where no commissions are due, a claimed conspiracy to defraud the broker of the commissions does not create a claim for relief. See *National City Bank of Rome v. Graham,* 105 Ga. App. 498 (2c) (125 SE2d 223); *Morgan v. Siegal,* 135 Ga. App. 559, 560 (218 SE2d 280). Accordingly, an essential element is missing for recovery of commissions as the sale was never consummated, and neither the brokerage corporation nor plaintiff was entitled to any commissions. *Morgan v. Siegal,* 135 Ga. App. 559, 560, supra. Nor was plaintiff entitled to any amount of monetary damages by reason of the mere conspiracy where plaintiff fails to show that he was defrauded out of any commissions, as there were none. See in this connection *Foremost Dairy Products v. Sawyer,* 185 Ga. 702, 716, 720 (196 SE 436), where a creditor was

allegedly defrauded by debtor's transfer to another of his property. The creditor therein was entitled to pursue the property but not entitled to a money judgment against the grantee for conspiracy or fraud. Since there were no commissions earned, there could be no damages.

5. The court did not err in granting summary judgment as to the costs for commissions against the defendant sellers in Counts 3 and 4; nor for conspiracy against all in' Count 5, since there was no commission earned even if the parties be guilty of fraud and conspiracy in the transaction. Since defendant DeBoer was not involved in Counts 1 and 2, it was properly dismissed as to the entire suit.

*Judgment affirmed. Quillian, P. J., and Marshall, J., concur.*

ARGUED OCTOBER 12, 1976 — DECIDED NOVEMBER 24, 1976.

*Grogan, Jones, Layfield & Swearingen, Milton Jones*, for appellants.

*W. H. Young, J. Norman Pease, Page, Scrantom, Harris, McGlamry & Chapman, W. G. Scrantom, Jr., Powell, Goldstein, Frazer & Murphy, Frank Love, Raymond H. Vizethann, Jr.*, for appellees.

