## 69919. O'BRIEN'S IRISH PUB, INC. et al. v. GERLEW HOLDINGS, INC.

(332 SE2d 920)

BENHAM, Judge.

Appellee, a business brokerage firm, sued for breach of an exclusive listing contract to sell O'Brien's Irish Pub, owned by appellant John Drillot. This appeal is from a jury verdict in favor of appellee in

the amount of 12% commission and attorney fees.

The evidence at trial showed that in December of 1982 appellee's agent, Linda Harvey, arranged a meeting between Drillot and two prospective buyers, Robert Orr and Karl Kortmeier. Kortmeier was the sole shareholder of Gentry's Food and Spirits, Inc., a restaurant and bar in Roswell, Georgia, and Orr was president of the corporation. Subsequently, Orr, Kortmeier, and Drillot met further to discuss the business, but Harvey was told by Drillot that it was not necessary for her to be there. Harvey made numerous telephone calls to determine if the sale was forthcoming, and was finally told by Drillot that Orr and Kortmeier had changed their minds because they could not come up with the money. The original listing under the contract expired on March 8, 1983, but there was a 12-month extension provision which Drillot declined to renew.

In April of 1983, Drillot told Harvey that the business was going to be sold, but that it was to be sold to people from out of state whom she had not brought to him. Several days later, Harvey learned that the business had been reopened as Gentry's Food and Spirits No. 2. Kortmeier later confirmed to another agent of appellee that he had purchased O'Brien's, but when Harvey questioned Drillot he contended that he was not liable to her for any commission. Drillot testified that he entered into a sales contract with one David Berkman on June 15, 1983, that he was unaware of any involvement of Orr and Kortmeier with Berkman, and that the closing took place in August. Drillot introduced into evidence a copy of an unsigned promissory note dated June 15, 1983, which he said he received at the closing. Appellee entered into evidence a promissory note dated July 15, 1983, payable to O'Brien's Irish Pub from Gentry's Food and Spirits No. 2, and signed by Berkman and Orr. Kortmeier testified that Gentry's No. 2 was formed in May or June of 1983, and that he was vice-president and had been a 20% shareholder since its incorporation on June 13, 1983. The shareholder's agreement of Gentry's No. 2 showed that Orr and Kortmeier together owned 40% of the stock of the corporation and that Berkman had assigned to them his right to purchase O'Brien's on June 13, 1983.

The "sole and exclusive" listing agreement between Drillot and Harvey provided for the payment by the seller of the "full commission set forth in this Agreement to the Broker in the event the property described herein is, within one year after the termination of this Agreement, sold, traded or otherwise conveyed to anyone referred to Seller by the Broker or with whom Seller had negotiations during the term of this Agreement." The contract further provided that if "any suit be commenced to enforce the Broker's rights herein, in the event the Broker is successful the Seller agrees to pay the Broker the expenses connected therewith, including attorney's fees incurred." The

original listing agreement and the appellee's copy admitted in evidence were signed on the line designated for the corporate name, "O'Brien's Irish Pub, Inc., and on the line below designated for the seller, "John Drillot." Drillot introduced his copy of the agreement on which the word "Pres." appeared after his signature.

1. Appellants urge error in the trial court's denial of Drillot's motion, made at the close of appellee's evidence, to dismiss appellee's complaint for failure to prove its claim that Drillot was individually liable under the contract sued upon. That motion was procedurally inappropriate since a dismissal under OCGA § 9-11-41 (b) on the ground that, upon the facts and the law, the plaintiff has shown no right to relief is available only in non-jury actions. Considering that appellants' argument in support of the motion was that the failure of appellee to produce evidence of Drillot's individual liability precluded a judgment against him, we will treat the motion as one for a directed verdict. OCGA § 9-11-50 (a). Since the evidence was in conflict as to whether Drillot signed the contract in an individual or representative capacity, a verdict absolving him from individual liability was not demanded, and the trial court properly denied his motion. See *Merr Enterprises v. Abbott Foods of Ga.*, 171 Ga. App. 464 (320 SE2d 214) (1984); *Evans v. Smithdeal*, 143 Ga. App. 287 (1) (238 SE2d 278) (1977).

2. Appellants contend that the trial court improperly denied their motion for directed verdict, arguing that appellee did not prove its right to recover its commission under the terms of the contract, because Harvey was not shown to be the procuring cause of the sale. However, the cases dealing with entitlement to commission by proving that the agent was the "procuring cause" of the sale generally apply in the absence of an exclusive contract to sell. See *Gibbs v. Nixon*, 154 Ga. App. 463, 466 (268 SE2d 670) (1980). "The plaintiff and the defendant having entered into an express contract creating the relationship of exclusive sales agency, the provisions of [OCGA § 10-6-32] are not applicable. This Code section embodies the implied obligation of a property owner to pay a commission to his broker when there has been a simple listing of the property with the broker, and is not applicable when the obligation to pay a commission has been expressly agreed upon; in such cases the terms of the express agreement control. [Cit.]" *Ragsdale v. Smith*, 110 Ga. App. 485, 488 (138 SE2d 916) (1964).

The present contract expressly provided that if the property within one year of the termination of the agreement was "sold, traded or otherwise conveyed to anyone referred to" Drillot by appellee, or with whom Drillot had negotiated during the term of the listing, appellee was entitled to its full commission. This court has recognized the validity of such extension provisions in exclusive listings. *Ellzey*

*Realty Co. v. Hugo, Inc.*, 154 Ga. App. 460, 461 (268 SE2d 717) (1980). The evidence was sufficient for the jury to find that during the extension period the property was sold, traded or otherwise conveyed to parties whom appellee referred to Drillot or with whom Drillot had negotiated during the term of the agreement, and that appellee was entitled to its full commission. Cf. *Metaxis v. Sanders*, 151 Ga. App. 702 (1) (261 SE2d 651) (1979).

3. Appellants assert that they are entitled to a new trial because the trial court failed to charge the law in regard to procuring cause and gave an erroneous instruction as to the broker's entitlement to a full commission. While appellants' attorney did except to the judge's refusal to give the requested instruction in a charge conference in chambers prior to the court's charge to the jury, no such objection was made after the instruction was given. "[T]he requirement is that there be a proper objection *after* the court instructed the jury and before the jury returned a verdict." (Emphasis supplied.) *Caudell v. Sargent*, 118 Ga. App. 405 (164 SE2d 148) (1968). Likewise, no proper objection was made to the instruction given which is complained of here. *Hurst v. J. P. Colley Contractors*, 167 Ga. App. 56 (2) (306 SE2d 54) (1983). Accordingly, these enumerated errors are without merit.

4. Appellants' last five enumerations of error concern the award of attorney fees to appellee. Those enumerations dealing with the trial court's instructions on this subject or failure to charge on this subject present no issue on appeal, since appellants made no written requests to charge on the issue and made no objection to the charge as it related to this issue. *Landon v. Lavietes*, 156 Ga. App. 123 (2) (274 SE2d 120) (1980).

Appellants' argument that there is no evidence to warrant an award of attorney fees has no merit. The contract at issue, containing a provision in which appellants agreed to pay attorney fees if appellee had to bring a legal action to enforce the contract, was in evidence, as was testimony concerning the amount of fees incurred by appellee. Those facts, when considered with the fact that appellee brought this suit to enforce the contract, were a sufficient evidentiary predicate for an award of attorney fees.

The only issue raised with regard to attorney fees which warrants discussion is the contention that an award of attorney fees was unauthorized because appellee failed to comply with the notice requirements of OCGA § 13-1-11. We agree that no notice pursuant to that section was given, but we find that such notice was not necessary in this case.

By its own terms, the section applies to "[o]bligations to pay attorney fees upon any *note or other evidence of indebtedness* . . ." (Emphasis supplied.) Our research does not reveal any Georgia case

in which that language has been construed in this context, but we reject appellants' argument that the section applies to every contract. See, e.g., *Boddy Enterprises v. City of Atlanta*, 171 Ga. App. 551 (320 SE2d 374) (1984). *Black's Law Dictionary*, Deluxe 4th ed., 1968, defines "evidence of debt" as "[a] term applied to written instruments or securities for the payment of money, importing on their face the existence of a debt." The word "note" has been defined in Georgia "as a written paper acknowledging a debt and promising payment." *Kirkland v. Bailey*, 115 Ga. App. 726, 728 (155 SE2d 701) (1967).

The contract at issue in this case does not fall within those definitions. We hold, therefore, that this contract, in which appellee agreed to perform services for appellants and appellants agreed to compensate appellee for those services, is not a "note or other evidence of indebtedness," and that OCGA § 13-1-11 is inapplicable to this case. It follows from those holdings that appellee was under no duty to notify appellants of its intention to seek attorney fees under the contract.

*Judgment affirmed. Banke, C. J., and McMurray, P. J., concur.*

DECIDED JUNE 18, 1985.

*Ronald J. Armstrong*, for appellants.

*Valerie G. Tobin, Thomas W. Tobin*, for appellee.