### A99A1801. MINTZ v. BARLOW.
(528 SE2d 306)

MILLER, Judge.

Philip Mintz and Robert Barlow jointly owned land that they leased to a corporation (in which they each owned one-third of the stock) that operated a barbeque restaurant on the premises. Concerned about his liability on over $650,000 in growing debt associated with the business, Mintz unsuccessfully approached Francis Harris about Harris buying him out. Mintz eventually sold Barlow (at cost) his interests in the land and corporation and received a release from the primary lender on over $600,000 of the liability and an indemnity from Barlow on the rest. Shortly thereafter, Barlow for the first time contacted Harris about selling him the land and corporate stock. Harris agreed to buy Barlow's interests in the land and corporation at a profit to Barlow, although unlike Mintz, Barlow remained liable on the debts.

Mintz subsequently sued Barlow for half of the profit, claiming that Barlow had secretly negotiated the deal with Harris prior to Mintz selling out to Barlow and that Barlow had fraudulently and in breach of fiduciary duty concealed this profitable deal from Mintz. Alleging unjust enrichment, Mintz also sued to recover under quantum meruit.

Barlow successfully moved for summary judgment on all three counts, which Mintz appeals.[1] Because the direct evidence that Barlow engaged in no negotiations with Harris prior to the sale of Mintz's interests to Barlow is not contradicted by the circumstantial evidence and because Mintz and Barlow had an express contract

---

[1] Barlow subsequently died, and Rachel Barlow as executrix of his last will and testament has been substituted as appellee.

regarding the sale, we affirm.

1. In his first two counts, Mintz asserts fraud and breach of fiduciary duty based on the allegation that Barlow concealed from him the alleged fact that, prior to the Mintz/Barlow sale, Barlow had already negotiated a deal with Harris to sell Harris their joint interests at a profit. Mintz alleges that the concealment fraudulently induced him to sell his interests to Barlow at cost, that as co-owner of the land Barlow breached fiduciary duties owed to Mintz to negotiate with Harris on both their behalf, and that Mintz should be awarded one-half the profit Barlow received on the Harris deal.[2]

We hold that the undisputed direct evidence conclusively established that Barlow did not engage in any negotiations with Harris until after the Mintz/Barlow sale and, therefore, no concealment took place that either fraudulently induced Mintz to sell out to Barlow or breached any fiduciary duties Barlow may have owed while a tenant in common or joint venturer with Mintz. Both Harris and Barlow testified without contradiction that the first time they discussed a possible sale to Harris was during the week *after* the Mintz/Barlow sale. The representative of the lender that was owed the business debts and that was involved in both transactions confirmed that the first he heard of any possible sale to Harris was during the week after the Mintz/Barlow sale. Mintz himself conceded that he had no knowledge of any negotiations between Harris and Barlow that took place prior to the Mintz/Barlow sale.

The importance of this testimony is threefold. First, regardless of what fiduciary duties Barlow may have owed to Mintz arising out of their joint venture or common land ownership, those duties clearly ceased once Mintz sold his interests to Barlow and Mintz was released from the debts. Thus, Barlow's actions in negotiating a deal with Harris after the termination of his relationship with Mintz could not breach any duties formerly owed to Mintz. Second, prior to the Mintz/Barlow sale Barlow could not have fraudulently concealed a deal with Harris when in fact he had not even spoken with Harris about such. Third, Mintz's assertion that Barlow negotiated a sale with Harris on both their behalf is belied by the fact that Barlow did not even approach Harris until after Mintz was out of the picture.

Where direct and positive testimony supports a motion for summary judgment, *Kappa Sigma Intl. Fraternity v. Tootle*[3] instructs that

---

[2] Cf. *Fuller v. McBurrows*, 229 Ga. 422, 425 (1) (192 SE2d 144) (1972) (tenants in common occupy a fiduciary relationship to each other with respect to their common title); *Conner v. Branch*, 185 Ga. App. 565, 566 (364 SE2d 890) (1988) (under certain circumstances concealment may serve as a basis for a fraud action).

[3] (Citation and punctuation omitted.) 221 Ga. App. 890, 892 (1) (473 SE2d 213) (1996).

the opposing party must show some other fact which contradicts the testimony. If this other fact is direct evidence, that is sufficient to allow the case to go to the jury; if the other fact is circumstantial evidence, it must be inconsistent with the defendant's evidence, or if consistent, it must demand a finding of fact on the issue in favor of the plaintiff.[4]

Mintz presented no direct evidence of any prior secret negotiations. Rather, he claimed that three pieces of circumstantial evidence demanded the inference of such. Scrutiny of this circumstantial evidence leads to a different conclusion.

First, Mintz points to minor inconsistencies in the testimony of Harris and Barlow about which day of the week the negotiations took place for the sale to Harris. Yet none of these inconsistencies point to any negotiations taking place prior to the week which followed the Mintz/Barlow sale. Thus, they do not contradict the direct, positive evidence that the negotiations took place after the Mintz/Barlow sale.

Second, Mintz focuses on the failure of either Harris or Barlow to record the warranty deed evidencing the sale of the land to Harris. Mintz extrapolates from this that the parties must have negotiated the sale to Harris prior to the Mintz/Barlow sale. But the inference that Harris and Barlow may have wanted to keep their deal secret after the fact does not lead to, let alone demand, the inference that the timing of their negotiations preceded the Mintz/Barlow transaction. There could be a myriad of reasons why they may have wanted to keep the deal quiet, none of which would have anything to do with the timing of their negotiations. To say otherwise is merely to speculate about possibilities that do not follow logically from the evidence.[5]

Third, Mintz emphasizes that Harris and Barlow had different views as to how they arrived at the purchase price and as to how the assets were valued. Once again, such minor inconsistencies had nothing to do with the timing of the negotiations and certainly do not demand an inference contradicting the direct testimony that the negotiations took place only after the Mintz/Barlow transaction.

The trial court did not err in concluding that the undisputed evidence showed that Harris and Barlow engaged in no discussions about a potential sale until after the Mintz/Barlow transaction. As this is the key allegation on which the fraud and breach of fiduciary duty counts rest, the trial court did not err in entering summary

---

[4] See also *Conner*, supra, 185 Ga. App. at 567.
[5] See *Edwards v. Campbell Taggart Baking Cos.*, 219 Ga. App. 806, 807 (1) (466 SE2d 911) (1996) ("'An inference cannot be based upon evidence which is too uncertain or speculative or which raises merely a conjecture or possibility.' [Cit.]").

judgment on these counts.

2. Nor did the court err in entering summary judgment on the quantum meruit count for Mintz and Barlow had an express contract regarding the sale of Mintz's interests to Barlow in exchange for a sum certain. "There cannot be an express and implied contract for the same thing existing at the same time between the same parties. A plaintiff is estopped to recover on quantum meruit where there exists an express agreement."[6] Mintz's claim that the express contract was void because of fraud fails in light of the conclusion of Division 1 above that there was no fraud. Moreover, because Mintz did not seek to rescind the contract and has retained its benefits, he is deemed to have affirmed the contract and is bound by its terms.[7]

*Judgment affirmed. Pope, P. J., and Smith, J., concur.*

DECIDED JANUARY 19, 2000 — 

*Cauthorn & Associates, Thomas E. Cauthorn III, Melissa M. Nohr*, for appellant.

*Troutman Sanders, Richard A. Newton, Robert W. Kamerschen, Robert E. Flournoy III*, for appellee.

---

[6] (Citations and punctuation omitted.) *Gerdes v. Russell Rowe Communications*, 232 Ga. App. 534, 537 (3) (502 SE2d 352) (1998).

[7] See *G. Mansour, Inc. v. Mansour's, Inc.*, 233 Ga. App. 7, 9 (1) (503 SE2d 304) (1998); cf. OCGA § 13-5-5 (fraud renders a contract voidable, not void).