A00A0165. B & R REALTY, INC. et al. v. CARROLL et al.
(537 SE2d 183)

MILLER, Judge.

The primary issues on appeal are (1) whether an express listing contract precludes a common law "procuring cause" claim for a commission on a sale of real estate, (2) whether a sale outside the extended term of the listing agreement precludes a claim for conspiracy to deprive commission, and (3) whether an express contract precludes a quantum meruit claim. We answer each question in the affirmative and therefore affirm.

On February 8, 1996, Donald and Sharon Carroll listed their real estate with Shield Realty[1] for $325,000 and promised to pay Shield Realty a ten percent commission, to be split with any broker representing the purchaser, if within the term of the agreement (1) Shield Realty procured a person ready, willing, and able to purchase the property at the listed price, or (2) the Carrolls entered into an enforceable contract to sell the property. The term was six months, expiring on August 8, 1996. The commission was also due if within 90 days of August 8 (i.e., by November 6, 1996) the Carrolls sold the property to anyone to whom the property was submitted during the six-month term of the agreement.

In April 1996, Michael and Cheryl Balchuck, acting through their broker Norton Mountain Properties, offered to buy the property for $275,000. Through Shield Realty the Carrolls countered with an offer to accept $323,000. Feeling the price was too high, the Balchucks did not counter further, and negotiations ceased. In late November 1996, after both the listing agreement and the 90-day period had expired, the Balchucks contacted the Carrolls directly about the property and without the involvement of any brokers purchased the property on December 27, 1996, for $300,000.

Shield Realty and Norton Properties sued the Carrolls and the

---

[1] Shield Realty is the trade name for B & R Realty, Inc.

Balchucks for a $30,000 broker's commission, asserting three theories of recovery: (1) quantum meruit, (2) conspiracy to deprive commission (with derivative claims for punitive damages and attorney fees), and (3) as the procuring cause they were entitled under common law to the commission. The trial court granted summary judgment to the Carrolls (sellers),[2] which Shield Realty and Norton Properties appeal.

1. Important at the outset is the observation that Shield Realty and Norton Properties, the two plaintiff/brokers, did not sue for breach of contract. Under the plain terms of the listing agreement, no commission is due. During the six-month term of the contract Shield Realty did not procure a purchaser willing to buy the property for $325,000, nor did the Carrolls enter into an enforceable agreement to sell the property.[3] The Carrolls did not sell within 90 days of the contract's termination to the Balchucks (to whom the property was submitted during the six-month term). Because "[t]he express provision for liability within the time limited implies its exclusion thereafter," the Carrolls are not liable under their listing agreement for a commission on the sale outside the 90-day extension period.[4]

2. The brokers assert that as the procuring cause of the sale, they are entitled (apparently under the common law as embodied in OCGA § 10-6-32) to a commission on the transaction. We will address this doctrine first as it applies to Shield Realty, then as to Norton Properties.

(a) *Shield Realty*. Where an express contract governs the conditions under which a commission is to be paid, *O'Brien's Irish Pub v. Gerlew Holdings*[5] explains that the common law "procuring cause" doctrine does not apply:

> [T]he cases dealing with entitlement to commission by proving that the agent was the "procuring cause" of the sale generally apply in the absence of an exclusive contract to sell. The plaintiff and the defendant having entered into an express contract creating the relationship of exclusive sales agency, the provisions of OCGA § 10-6-32 are not applicable. This Code section embodies the implied obligation of a prop-

---

[2] The Balchucks had not moved for summary judgment at that time.

[3] Appellants speculate that certain phone calls between the Carrolls and the Balchucks in June and July 1996 show that these parties agreed to wait on the transaction so as to deprive the appellants of their commission. Setting aside the fact that the only substantive evidence about the content of these phone calls shows they concerned other business, the calls could not have constituted an enforceable agreement to sell the property, for a contract to sell real estate must be written. OCGA § 13-5-30 (4).

[4] *Kenney v. Clark*, 120 Ga. App. 16, 18 (2) (b) (169 SE2d 357) (1969).

[5] 175 Ga. App. 162 (332 SE2d 920) (1985).

erty owner to pay a commission to his broker when there has been a simple listing of the property with the broker, and is not applicable when the obligation to pay a commission has been expressly agreed upon; in such cases the terms of the express agreement control.[6]

"Each contract by which one employs another to sell real estate must be construed according to its particular stipulations."[7] If the landowner sells the property after the listing agreement has expired, and after any post-termination periods during which sales to certain persons are subject to the commission, no commission is generally due.[8] Because OCGA § 10-6-32 does not override the terms of the listing agreement, no commission is due here.

Moreover, even if OCGA § 10-6-32 did control, it provides that the broker's commission is earned only "when, *during the agency*, he finds a purchaser [who is] ready, able, and willing to buy and who actually offers to buy on the terms stipulated by the owner."[9] The evidence is undisputed that the Balchucks were not willing to buy the property at the stipulated price of $325,000 and did not offer to do so and that, more than three months after the Carrolls' listing agreement had expired and the agency with Shield Realty had ended, they purchased it for substantially less. The statutory conditions are not met.

(b) *Norton Properties*. Under the Norton Properties/Balchuck arrangement, the seller would pay any commission. Norton Properties was also aware that the Carrolls' listing agreement with Shield Realty contemplated that any commission the Carrolls paid to Shield Realty would be shared with any broker acting on behalf of the buyer. But again, those terms authorizing a commission to Shield Realty were not met, and so Norton Properties' derivative claim fails.

Significantly, Norton Properties had no separate arrangement nor agency with the Carrolls but had its own arrangement with the Balchucks, on whose exclusive behalf it acted. "Of course, it is fundamental that some arrangement or agency would have to exist between the parties before a real-estate broker could collect a commission from a property owner for the sale of his property. . . ."[10]

---

[6] (Citations and punctuation omitted.) Id. at 164 (2).

[7] *Humphries & Jackson v. Smith*, 5 Ga. App. 340, 343 (3) (63 SE 248) (1908).

[8] *Howington v. Farm & Home Realty*, 148 Ga. App. 501, 503-504 (251 SE2d 591) (1978); *Kenney*, supra, 120 Ga. App. at 18-19 (2) (b); *Ragsdale v. Smith*, 110 Ga. App. 485, 488 (1) (138 SE2d 916) (1964); compare *Goodman v. Frolik & Co.*, 233 Ga. App. 376, 377-378 (1) (504 SE2d 223) (1998) (sale within post-termination period is subject to commission).

[9] (Citations and punctuation omitted; emphasis in original.) *Dorsey-Alston Co. v. Bohn*, 141 Ga. App. 894, 897 (234 SE2d 716) (1977).

[10] *Galloway v. McKinley*, 73 Ga. App. 381, 384 (2) (36 SE2d 485) (1945); accord *Dorsey-*

Norton Properties cannot recover under common law.

3. The brokers next contend that the Carrolls and the Balchucks conspired to deprive them of their commission. But "[i]f no cause of action is otherwise alleged, the addition of allegations concerning conspiracy will not make one."[11] Thus, where no commission is due, a claimed conspiracy to deprive the brokers of the commission does not create a claim for relief.[12] Since no commission was due under the undisputed facts here, this claim must fail.

The punitive damages and attorney fees claims, which are derivative of this cause of action, therefore also fail.[13]

4. Finally, the brokers assert a quantum meruit claim for the commission. Shield Realty's claim must fail because the Carrolls and Shield Realty had an express contract on this very subject matter. "There cannot be an express and implied contract for the same thing existing at the same time between the same parties. A plaintiff is estopped to recover on quantum meruit where there exists an express agreement."[14] Norton Properties fares no better, for it anticipated that its commission would come under the terms of the Shield Realty listing agreement and is thus also estopped from asserting a quantum meruit claim. Moreover, Norton Properties was the exclusive agent of the Balchucks; it had no relationship with the Carrolls, performed no services for them, and did not act on their behalf. Under OCGA § 9-2-7,[15] Norton Properties cannot state a claim for quantum meruit.

The court correctly granted summary judgment to the Carrolls on all claims.

*Judgment affirmed. Pope, P. J., concurs specially. Smith, P. J., concurs in judgment only.*

POPE, Presiding Judge, concurring specially.

Under the circumstances I cannot agree that Shield Realty and Norton Properties have no claim against the Carrolls as a matter of

---

*Alston Co.*, supra, 141 Ga. App. at 897.

[11] (Citations and punctuation omitted.) *Barnett v. Eubanks*, 105 Ga. App. 749, 751 (125 SE2d 571) (1962).

[12] *Martin v. Hendrix, Waddell, Martin & Co.*, 140 Ga. App. 557, 561 (4) (231 SE2d 526) (1976); see *Woodall v. McEachern*, 113 Ga. App. 213, 220-221 (147 SE2d 659) (1966) (whole court) (conspiracy to defraud broker of earned commissions often shown by proof that seller breached his contract with broker by selling directly to procured purchaser, or to straw man, or by proof of wrongful interference with the relationship between the broker and the purchaser).

[13] *Matthews v. Tele-Systems*, 240 Ga. App. 871, 874 (4) (525 SE2d 413) (1999).

[14] (Punctuation and footnote omitted.) *Mintz v. Barlow*, 241 Ga. App. 860, 863 (2) (528 SE2d 306) (2000).

[15] "Ordinarily, when one renders service or transfers property which is valuable to another, which the latter accepts, a promise is implied to pay the reasonable value thereof."

law. Rather, the facts do not support a claim.

As for Shield Realty, even in the case of an exclusive listing agreement with a fixed term, the agent would not be deprived of his commissions if the agent has fully performed his obligations, and "only the refusal or interference of the owner has prevented the consummation of the sale according to the terms authorized in the contract of listment." *Roberts v. Prater & Forrester*, 29 Ga. App. 245 (1) (114 SE 645) (1922). Compare *Busbin v. Suburban Realty*, 236 Ga. 783 (225 SE2d 316) (1976) (this rule not applicable where sales contract not enforceable). And, if the Carrolls and Balchucks intended to thwart the sale during the term of the agency agreement, then a conspiracy claim could exist.

Although there is evidence that the Carrolls made a five-minute telephone call at 9:30 p.m. on July 18, 1996, from their home to the Balchucks' home — before the seller's brokerage agreement expired, there is no evidence that the Carrolls interfered with consummation of the negotiations that took place in April. Compare *Christopher Investment Properties v. Cox*, 219 Ga. App. 440, 443 (1) (465 SE2d 680) (1995). After April, there were no ongoing negotiations between any of the parties. Further, with regard to the phone call, there is no evidence other than speculation that the conversation involved avoiding Shield Realty's agreement. "An inference cannot be based upon evidence which is too uncertain or speculative or which raises merely a conjecture or possibility." (Citation and punctuation omitted.) *Edwards v. Campbell Taggart Baking Cos.*, 219 Ga. App. 806, 807 (1) (466 SE2d 911) (1996). Thus, Shield Realty has no claim against the Carrolls.

As for Norton Properties, "[a] real-estate agent employed to purchase land is as much entitled to be compensated, in accordance with his contract, as one employed to sell land in behalf of the owner." *Roberts v. Martin*, 15 Ga. App. 205, hn. 1 (82 SE 813) (1914). Norton Properties' claims are not derivative of Shield Realty's claims. As recently stated by this Court,

> Where a broker or agent can show that he was thwarted in his efforts to consummate a sale by the interference of the property owner, he . . . can "make out a prima facie case when he shows that negotiations for the sale were set on foot through his efforts, that he performed every service required by his employment which it was possible to perform, and that the failure on his part to personally consummate the (transaction) was due to the interference of the defendant.

*Christopher Investment Properties v. Cox*, 219 Ga. App. at 443 (1). See also *Hodges-Ward Assoc. v. Ecclestone*, 156 Ga. App. 59, 61-62 (1)

(273 SE2d 872) (1980) (even though owner/agent owed no commission to buyer's broker, buyer's broker could recover as procuring cause of sale). If the Carrolls never had an exclusive agent but had been approached directly by Norton Properties on behalf of the Balchucks, Norton Properties would be entitled to a commission if it was the procuring cause of the sale. Indeed, the proposed sales contract submitted by the Balchucks included an agreement by the seller to compensate Norton Properties.

But if the parties in good faith break off their negotiations and the sale is made after the broker has discontinued his efforts, then the broker is not the procuring cause of a subsequent transaction between the same owner and buyer. *Parrish v. Ragsdale Realty Co.,* 135 Ga. App. 491, 494 (3) (218 SE2d 164) (1975). And as stated above, there is no evidence that the Carrolls and the Balchucks conspired to break off the April negotiations for the purpose of thwarting anyone's commission. Nor were there any ongoing negotiations between Norton Properties and the Carrolls after that. Thus, Norton Properties' claims of procuring cause and conspiracy must fail. See *Fields Realty & Ins. Co. v. Teper,* 165 Ga. App. 28, 30 (2) (299 SE2d 74) (1983). Because it never performed services for the Carrolls, Norton Properties does not have a quantum meruit claim against them. Norton Properties' claims against the Balchucks are not before us.

DECIDED JULY 12, 2000.

*English, Tunkle & Smith, Richard D. Tunkle,* for appellants.
*Malcolm S. Campbell, Sean A. Black,* for appellees.