## 59590. ELLZEY REALTY COMPANY, INC. et al. v. HUGO, INC. et al.

Deen, Chief Judge.

The appellant filed suit against the defendant owner and its board of directors seeking commissions for the sale of a motel under the extension clause of an exclusive listing agreement. Its subsequent motion for summary judgment was denied at the trial level and it filed an application for interlocutory appeal to this court. We granted the petition for the purpose of deciding whether, under the facts stated in this record, the broker would be entitled to such commission as a matter of law, and have reached the conclusion on further examination that the court properly held that issues exist for jury determination.

Our attention on this appeal has been directed primarily to paragraph 4 of the exclusive listing agreement which provides: "If

said property is sold within one year after expiration of said period of employment to any persons, firm, or corporation to whom said property has been presented during said period, owner agrees to pay the undersigned member firm said commission." We recognize the validity of such extension provisions generally in exclusive listings. See 51 ALR 3d, Anno., 1149 Brokers' Fees — Sale after Listing, et seq. Since this contract was prepared by the appellant, who is also the movant in the summary judgment motion, we must in determining the case construe any ambiguity or factual contest against the appellant. It appears that the owners (we do not here distinguish between the corporation and its officers, as this is a question for determination on the final trial) were approached by one Hammond, an agent for Canadian Motel Associates, who had previously had discussions with Heffernan, a general partner in that association, about purchasing a motel which comprised most of the property belonging to Hugo, Inc. Operations of the motel were discussed in detail and the revenue performance level of the business examined. At the owners' instance their bookkeeper provided tax receipt information to Hammond for the preceding year, which she went over with him in detail. This was in May and June of 1977. The exclusive listing was signed somewhat later and the broker informed that the stated price ($1,773,000) was not negotiable. According to Hugo's deposition the original parties had become actively involved in negotiations for the sale of the property, although they were not concluded at the time of the listing agreement. There was one meeting between Hugo and Heffernan in the appellant's office during the life of the listing agreement, following which, in December, 1977, the former was presented with a proffered sales contract at a price substantially less than that indicated in the listing agreement, which was refused. Shortly thereafter (around December 15, 1977) appellant requested the owners to reduce their asking price; this was also refused and Ellzey stated that he was quitting; he left the room and no further negotiations took place. Approximately a year later, in December, 1978, the defendants sold the property for a substantially higher price to Canadian Motel Associates, and the appellant demanded a commission, upon refusal of which this suit was filed.

This being an exclusive listing agreement, had the sale contract been accepted during its lifetime the commission would be payable regardless of whether any contribution had been made by the broker toward procuring the sale. Since it was not, our only question is whether the phrase "to whom the property has been presented," found in the one-year extension clause designed to follow on expiration of the exclusive listing, means presented by the

broker in such manner either that he introduced the buyers to the property or that he was in some other way a part of the procuring cause of the sale. The defendants' position is that they procured the sale both by making initial contact with the group and by selling them the property many months after the listing contract had expired under its own terms as well as under the termination notice by the broker.

The primary meaning of the verb *to present* according to Webster's Unabridged Dictionary is to bring or introduce into the presence of someone, or to introduce for acquaintance. Obviously in this sense the property was not *presented* to the purchasers since they had had extensive negotiations with the owners prior to that time. Nor does it appear that the appellant was in any way concerned with or a procuring cause of the sale which eventually took place.

To the effect that, where the time of the exclusive listing agreement has lapsed without a sale, extension clauses prepared by the broker (who is not in fact the procuring cause of the sale) are very narrowly scrutinized, see Roy Annett, Inc. v. Killin, 365 Mich. 389 (112 NW2d 497) (1961); Ackman v. Toren, Inc., 179 NYS2d 128, affd. 158 NE2d 503 (1959); Olsen v. Kidman, 120 Utah 443 (235 P2d 510) (1951); E. M. Boerke, Inc. v. Williams, 28 WIS2d 627 (137 NW2d 489) (1965). We have found no extension agreement enforcement of which is dependent upon use of the word "presented" referring to a prospect who has been encouraged to purchase the property listed but who is already thoroughly familiar with it through prior negotiations. Georgia cases dealing with extension agreements following the termination of an exclusive listing place emphasis on whether the broker was in fact a part of the procuring cause of the sale. In *Glassman v. Melrose Const. Co.,* 100 Ga. App. 763, 767 (112 SE2d 282) (1959), the court stated: "It cannot be denied that the corporation benefited from Mr. Crowe's acts and conduct . . . Where the broker is the procuring cause, the owner is liable for commissions even if he sells to the broker's prospect at a price less than that listed with the broker." In *Kenney v. Clark,* 120 Ga. App. 16 (169 SE2d 357) (1960) the three-month extension period had expired at the time of the sale, as was also the case in *Wofac Corp. v. Hanson,* 131 Ga. App. 725 (206 SE2d 614) (1974), and in *Howington v. Farm & Home Realty, Inc.,* 148 Ga. App. 501 (251 SE2d 591) (1978), although in all these cases the ultimate purchaser was in fact procured by the broker. In the present case it appears that negotiations were first entered into between the Hugo group and Hammond; that the listing with appellant was at a stated price and the appellant was notified that the sale would not be made for less;

that the broker nevertheless attempted to arrange a sale for a lesser amount with the same group, which attempt was unavailing, and that almost a year after the exclusive listing period had ended the sale was negotiated at a substantially higher price between the original parties. We cannot say as a matter of law either that the broker was any part of the procuring cause of the sale or that the broker "presented" the property to the group who had previously engaged in efforts to purchase it.

The trial court properly denied the motion for summary judgment.

*Judgment affirmed. Birdsong and Sognier, JJ., concur.*

ARGUED MARCH 5, 1980 — DECIDED APRIL 9, 1980 — REHEARING DENIED APRIL 29, 1980 — 

*Karen M. Krider, B. Michael Magda,* for appellants.
*Edward E. Boshears,* for appellees.