A06A0123, A06A0124. KENT v. GRAHAM COMMERCIAL
REALTY, INC.; and vice versa.
A06A0870. GRAHAM COMMERCIAL REALTY, INC. v. WARD
et al.
(631 SE2d 753)

ANDREWS, Presiding Judge.

These appeals concern whether Graham Commercial Realty, Inc. (GCR) is entitled to real estate sales commissions under the terms of separate but identically-worded marketing agreements granting GCR the exclusive right to market and sell real property owned by Mary Kent and adjacent real property owned by Paul and Marjorie Ward. GCR sued Kent in Fulton County Superior Court and the Wards in Cherokee County Superior Court for commissions claimed due under the marketing agreements after the owners sold their respective properties without paying commissions to GCR. Kent and the Wards defended the suits by asserting that no commissions were due because their marketing agreements with GCR had expired, or because GCR fraudulently induced them to enter the agreements.

On cross-motions for summary judgment, the Fulton Superior Court ruled in favor of GCR in part by finding that the marketing agreement had not expired when Kent sold her property. But the court also ruled in favor of Kent in part by concluding that a factual issue existed as to whether GCR fraudulently induced Kent to enter the agreement. In Case No. A06A0123, Kent appeals from the ruling that the agreement had not expired, and in Case No. A06A0124, GCR cross-appeals from the fraud ruling. On similar cross-motions for summary judgment, the Cherokee Superior Court ruled in favor of

[31] See id.

GCR on the fraud claim, but granted summary judgment in favor of the Wards on the commission claim by finding that the marketing agreement with GCR had expired when the Wards sold their property. In Case No. A06A0870, GCR appeals from the grant of summary judgment in favor of the Wards on the commission claim.

1. GCR contends that the Fulton Superior Court erred by denying its motion for summary judgment on Kent's claim that GCR fraudulently induced her to enter the marketing agreement by making false representations to her regarding the term of the agreement and concealing other aspects of the agreement.

In her deposition, Kent identified her signature on the GCR marketing agreement, but she testified that she did not remember signing the agreement, could not recall meeting with a GCR representative to discuss the agreement, and could not recall anything that any GCR representative told her about the agreement before she signed it. A GCR representative testified by deposition that he met with Kent and her adult son, explained the provisions in the agreement, and left the agreement with Kent for her consideration. The representative said that he later picked up the signed agreement from Kent after Kent's son called and told him that his mother had signed the agreement. Although Kent stated that she did not read because of poor eyesight, the GCR representative said that he was not aware that Kent had any reading difficulties. There was no confidential relationship between Kent and GCR that would excuse Kent from exercising ordinary diligence to learn the contents of the agreement before she signed it. There is no evidence that Kent was prevented by fraud or artifice from reading the agreement or having it read to her before she signed it. In fact, Kent did not testify that she was unaware of the contents of the agreement when she signed it, but only that she could not remember meeting with the GCR representative or her son about the agreement. On the present record, there is no evidence that GCR engaged in fraudulent conduct of any kind, and there is no basis for Kent's claim that GCR fraudulently induced her to sign the marketing agreement by making false statements about the agreement or by concealing parts of the agreement. *Parrish v. Jackson W. Jones, P.C.*, 278 Ga. App. 645 (629 SE2d 468) (2006); *Campbell v. C & S Nat. Bank*, 202 Ga. App. 639, 640 (415 SE2d 193) (1992). Accordingly, the Fulton Superior Court erred by denying GCR's motion for summary judgment on Kent's fraud claim in Case No. A06A0124. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

2. The Wards did not appeal from the Cherokee Superior Court's dismissal of their fraud claim. It follows that the controlling issue in Case Nos. A06A0123 and A06A0870 with respect to GCR's commission claims is whether the marketing agreements with Kent and the Wards had expired when the respective properties were sold.

Both marketing agreements were identical form contracts prepared by GCR, which gave GCR the exclusive right to market and sell the owner's property for an initial term of 12 months from the date of the agreement. The agreements further provided that, at the end of the initial term, the agreements shall automatically renew in increments of ninety days for a total of four renewal terms. Although the agreements provided that either party could terminate at the end of the initial term or at the end of the renewal term then in effect by giving written notice 30 days prior to the end of the initial or renewal term, the record does not reflect that any party gave the required notice. The agreements provided that, in the event GCR produced a purchaser ready, willing and able to buy the property at the price and upon the terms set forth in the agreement, the owner shall pay GCR a real estate commission of ten percent of the gross purchase price paid at closing. Under the agreements, the commission was payable whether any sale was made directly or indirectly during the term of the agreement by GCR, the owner, or any other person. Finally, both agreements specifically provided that:

> In the event of the execution of a sales contract, the term and other time periods in this Agreement shall be automatically extended for a period of time equal to the number of days between the date of execution of said sales contract and the date said contract is consummated or finally terminated.

The record shows that the GCR marketing agreement with the Wards was executed on June 7, 2000, and the GCR marketing agreement with Kent was executed on June 13, 2000. Unless the marketing agreements were automatically extended by execution of sales contracts, it follows that, with an initial term of twelve months plus four consecutive ninety-day renewal terms, both marketing agreements would have expired under these provisions in June 2002. In October 2002, without notice to GCR, the Wards and Kent entered into separate sales contracts to sell the property at issue to Holton & Associates, Inc. (Holton), and they subsequently sold their property pursuant to these contracts in May 2003. The Wards and Kent contended that no commissions were owed to GCR on these sales because their marketing agreements with GCR had expired when they sold the property.

However, the record shows that in December 2000, during the initial terms of the marketing agreements, GCR obtained a prospective buyer for both properties and that this buyer, Paradise Development Group, Inc. (PDG), executed identically-worded contracts with the Wards and Kent concerning the sale of their respective properties. The PDG contracts with the Wards and Kent remained

pending for a period of 16 months until the contracts were finally terminated by PDG without a sale in April 2002. GCR's commission claims were based on the contention that its marketing agreements with the Wards and Kent remained in effect when the owners sold their properties to Holton in May 2003 because, by their express provisions, the agreements automatically extended for a period of time equal to the 16 months between the execution and final termination of the PDG contracts. In response to this contention, the Wards and Kent argued that the PDG contracts did not extend the term of the marketing agreements because performance under the contracts was entirely in PDG's discretion, and therefore the PDG contracts were void as sales contracts for lack of mutually binding promises. The Wards and Kent also contended that the contracts gave PDG a discretionary option to buy — amounting to option contracts — and that only valid sales contracts could extend the terms of the marketing agreements.

The contracts at issue between PDG (the buyer) and the Wards and Kent (the sellers) provided that "Subject to the terms and conditions of this Agreement, Seller agrees to sell and Buyer agrees to buy [the described property]." After setting forth price terms and providing for the buyer to deposit earnest money into escrow in the amount of $10,000, the contracts provided that the buyer shall have a "feasibility period" of 120 days "within which to conduct and make such feasibility studies as Buyer deems necessary. . . ." The contracts provided that the "Buyer shall have the right to extend the Feasibility Period by not more than two (2) periods of thirty (30) days each" by giving notice prior to the expiration of the period and delivering an extension deposit of $10,000 into escrow for each extension "which amount(s) shall be in addition to the Earnest Money deposit." Central to the issue of whether the contracts lacked mutuality or were option contracts because PDG was not bound to buy, each contract specifically provided that:

> In the event that Buyer determines, in Buyer's sole and absolute discretion prior to the expiration of the Feasibility Period (as the same may have been extended), that the acquisition of the Premises is not desirable, then this Agreement shall automatically cancel and terminate.

Under the PDG contracts, a purchase would occur only if the buyer elected in writing to do so prior to the expiration of the feasibility period. If the buyer elected not to proceed with the purchase, all earnest money together with any accrued interest would be refunded to the buyer. The contracts also provided that extension deposits were nonrefundable to the buyer, unless the seller breached the contracts,

or there was a failure of any condition precedent to the buyer's obligation to close as set forth in the contracts. Other portions of the contracts provided that, if any condition precedent to the buyer's performance was not satisfied or waived by the buyer, the buyer may, at the buyer's option, terminate the contract and receive a refund of all earnest money, extension deposits, and accrued interest.

The record shows that the contract between the Wards and PDG was executed on December 12, 2000, and recited a sales price of $1,050,000, and the contract between Kent and PDG was executed on December 19, 2000, and recited a sales price of $875,000. Both PDG contracts were subsequently amended by similarly worded written amendments signed by the parties which extended the 120-day feasibility period set forth in the contracts. In the first two amendments, the feasibility periods in the contracts were extended by 60 days and 90 days, respectively, and PDG deposited $20,000 into escrow on the Ward contract and $20,000 into escrow on the Kent contract as extension deposits. In the third amendment executed to each contract, the feasibility period was extended for another 120 days, the purchase price in each contract was reduced by $150,000, and the deadline for closing was deleted from the contracts. No additional extension deposits were paid into escrow for the third amendments, but the third amendments specifically provided that, upon execution of the amendments, $5,000 of the $10,000 earnest money held in escrow on the Kent contract be released to Kent, and $5,300 of the $10,000 earnest money held in escrow on the Ward contract be released to the Wards. Finally, in the fourth amendment executed to each contract, the feasibility period was "extended through and including April 17, 2002." On April 17, 2002, PDG exercised the "sole and absolute discretion" granted to it in the contracts to "automatically cancel and terminate" the contracts by informing the Wards and Kent that it elected not to buy the property. It is undisputed that, when PDG elected not to buy the property, it demanded and received a refund of all earnest money, extension deposits, and accrued interest, except for the $5,000 paid to Kent and the $5,300 paid to the Wards under the terms of the third amendments to the contracts.

In the cross-motions for summary judgment, the Fulton and Cherokee Superior Courts considered the issue of whether the PDG contracts automatically extended the term of the GCR marketing agreements. The Fulton Superior Court ruled in favor of GCR finding that, even if PDG had absolute discretion as to whether to buy the property, the contract was not void for lack of mutuality of obligation because there was other consideration flowing to Kent which rendered the need for a mutual promise to buy unnecessary. Accordingly, the Fulton Superior Court found that the contract between Kent and

PDG was a valid sales contract which extended the term of GCR's marketing agreement to cover Kent's subsequent sale to Holton. In the absence of any evidence that GCR fraudulently induced Kent to enter into the marketing agreement (see Division 1, supra), the effect of this ruling would be to grant summary judgment to GCR on its claim for a commission due on a sale by Kent occurring during the term of the marketing agreement. Considering the identically-worded contract between the Wards and PDG, the Cherokee Superior Court reached the opposite conclusion. The Cherokee Superior Court ruled that the contract between the Wards and PDG did not extend the term of GCR's marketing agreement to cover the Wards' subsequent sale to Holton because the PDG contract was a sales contract void for lack of a mutually binding promise to buy from PDG or other consideration flowing to the Wards. Under this ruling, the court granted summary judgment to the Wards on GCR's commission claim by concluding that the marketing agreement had expired when the Wards sold the property, and therefore GCR had no claim to a commission due on a sale occurring during the term of the agreement.

We conclude that GCR had no claim to commissions due from the Wards or Kent for sales occurring during the term of the marketing agreements. GCR's claim to commissions due during the term of the marketing agreements was based on its claim that neither agreement had expired when the Wards and Kent sold their respective properties to Holton in May 2003 because the agreements were automatically extended for a period of time equal to the 16 months during which PDG was obligated by sales contracts to buy the properties. We agree with GCR that, under the express terms of the marketing agreements, the agreements were automatically extended for the duration of "sales contracts" executed during the term of the agreements, but we find that the contracts executed by PDG with the Wards and Kent were not sales contracts. Both contracts were, in effect, option contracts giving PDG the right to "automatically cancel and terminate" the contract by exercising its "sole and absolute discretion prior to the expiration of the Feasibility Period (as the same may have been extended) [to determine] that the acquisition of the Premises is not desirable. . . ." Instead of giving written notice during the feasibility period that it elected to buy the property owned by the Wards or Kent, PDG exercised its complete discretion not to buy and cancelled both contracts.

> The obligation by which one binds himself to sell, and leaves it discretionary with the other party to buy is, in law, termed an option, which is simply a contract by which the owner of property agrees with another person that he shall have [the]

right to buy the described property at a fixed price within a certain time specified.

*Chatham Amusement Co. v. Perry*, 216 Ga. 445, 446 (117 SE2d 320) (1960). An option contract, by its nature unilateral and executory because of the complete discretion granted to the holder of the option, is converted into a sales contract enforceable by the seller only when the holder gives notice of the election to buy the property at the price and on the terms stated in the option contract. Id.; *Warthen v. Moore*, 258 Ga. 198, 200 (366 SE2d 666) (1988). We need not determine whether the PDG contracts with the Wards and Kent contained mutually binding promises or other consideration sufficient to establish that they were valid sales contracts. See *Crawford v. Baker*, 207 Ga. 56, 60, 61 (60 SE2d 146) (1950); *Brack v. Brownlee*, 246 Ga. 818 (273 SE2d 390) (1980). Because PDG never elected to buy the property owned by the Wards and Kent, no sales contracts came into existence, and therefore the marketing agreements were not automatically extended under the "sales contract" provisions. It follows that, when the Wards and Kent sold their respective properties to Holton, the GCR marketing agreements had expired, and GCR was not entitled to claim that commissions were due because sales were consummated prior to expiration of the agreements.[1] Accordingly, the Fulton Superior Court's ruling on summary judgment in favor of GCR's commission claim against Kent in Case No. A06A0123 is reversed, and the Cherokee Superior Court's grant of summary judgment in favor of the Wards on GCR's commission claim in Case No. A06A0870 is affirmed. *Lau's Corp.*, supra. Although the Cherokee Superior Court based its ruling on other grounds, a judgment right for any reason will be affirmed. See *City of Gainesville v. Dodd*, 275 Ga. 834 (573 SE2d 369) (2002).

*Judgment reversed in Case Nos. A06A0123 and A06A0124. Judgment affirmed in Case No. A06A0870. Barnes and Bernes, JJ., concur.*

DECIDED MAY 24, 2006.
*Case Nos. A06A0123 & A06A0124*

---

[1] The GCR marketing agreements also provided, under certain circumstances, for payment of commissions on sales consummated within 12 months after the expiration of the agreements. This court has recognized the validity of such extension provisions in exclusive listing agreements. *Ellzey Realty Co. v. Hugo, Inc.*, 154 Ga. App. 460, 461-462 (268 SE2d 717) (1980); *Goodman v. Frolik & Co.*, 233 Ga. App. 376, 377-378 (504 SE2d 223) (1998). It is not clear whether GCR also claims commissions due under the extension provisions. We note only that this claim was not considered by the Fulton or Cherokee Superior Courts, and that we do not decide whether such a claim was asserted or has merit.

*Gerber & Gerber, Bernard M. Gerber, Robert S. Sichel,* for appellant.

*Myles E. Eastwood,* for appellee.

Case No. A06A0870

*Hasty, Pope & Ball, Marion T. Pope III, Myles E. Eastwood,* for appellant.

*Gerber & Gerber, Bernard M. Gerber, Robert S. Sichel,* for appellees.