**FIRST DIVISION**
**BARNES, P. J.,**
**LAND and WATKINS, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**February 28, 2024**

# In the Court of Appeals of Georgia

A23A1772. BELL et al. v. CROSS.

LAND, Judge.

Deborah Cross entered into a real estate lease with an option to buy agreement with Gregory and Brenda Bell. After the parties disputed whether Cross satisfied the terms of the option in the lease when she sent written notice exercising her right to the option to buy, Cross filed a complaint for specific performance, breach of contract, quantum meruit and other damages against the Bells. The parties filed cross-motions for summary judgment seeking, among other things, a ruling as to whether Cross's letter notifying the Bells of her intent to accept the option to buy was valid. Finding that the language of the purchase option agreement was ambiguous, the trial court granted partial summary judgment on specific performance to Cross and ordered that

Cross was "entitled to the benefits of the option to buy contained in the [l]ease agreement."[1] The Bells appeal from that order. For the following reasons, we reverse the trial court's grant of summary judgment to Cross and remand the case to the trial court for further proceedings.

"Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." (Citation and punctuation omitted.) *Cowart v. Widener*, 287 Ga. 622, 623 (1) (a) (697 SE2d 779) (2010). "We review the grant of a motion for summary judgment de novo, viewing the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant." (Citation and punctuation omitted.) *Lowe v. Etheridge*, 361 Ga. App. 182, 182 (862 SE2d 158) (2021).

So viewed, the evidence shows that on November 12, 2013, the Bells entered into a lease purchase agreement with Cross for real property located at 162 Nunnally

---

[1] The trial court's order held that "[a]ll other matters raised in the motion regarding damages are not ripe for a summary judgment determination. Specifically, this Court has insufficient evidence to determine the appropriateness and reasonableness of the request for summary judgment regarding the repairs, maintenance and attorneys fees. As such, the requests for damages remain for trial."

Way in Leesburg. The agreement required Cross to pay rent at a set monthly rate of $1,273.33, "inclusive of taxes and insurance," directly to the mortgage servicing company. It also granted Cross the option to purchase the property for $201,214.86. The lease was prepared by the Bells, and contained the following language providing Cross with the option to buy:

> (1) OPTION TERM. Provided that the tenant does not default on the agreement, the Tenant has the option to purchase from the period which commences on January 1st, 2014 and expires on January 1st, 2019.

> (2) Notice for Purchase Option. If the Tenant desires to exercise the Option to Purchase, he/she/they shall provide written notice to the Landlord of their intent to purchase. The closing date shall be specified in the notice, which must occur prior to the expiry of this lease purchase agreement.

> (3) Option Consideration. As per lease purchase agreements the Tenant shall pay the Landlord the sum of $28,415.75 as a non-refundable fee in consideration for this Option to Purchase. If the Landlord defaults on the loan, they will pay the tenant 10% of the fee plus $28,415.75

> . . .

(11) Modifications. No modification or waiver of rights can be made to this lease purchase agreement without the express written consent of both parties.

On December 26, 2018 – six days before the expiration of the option term – Cross mailed a letter to the Bells indicating her intention to purchase the property. The letter stated, in part, that

> I am writing this letter to confirm my intent to purchase the property at 162 Nunnally Way in accordance with the terms [of the] lease purchase agreement. . . Since [the lease] agreement indicates that [Cross] must offer a date to assume ownership of the property, I propose a meeting(s) between December, 2018 and April, 2019 to complete the proper documents to transfer ownership. To support refinancing the home, please send me appropriate . . . documents (i.e., deed, mortgage, tax, liens) to review.

Although the closing did not take place, Cross remained in the property and the record shows that the parties exchanged text messages after the expiration of the option term, attempting to conduct an appraisal so that the mortgage company could "determine what options they can provide on the house." Further, when the Bells failed to pay the difference between the rent payment and the increased monthly mortgage payment after the expiration of the option term, the mortgage company sent

4

a notice of default. To avoid foreclosure, Cross paid the delinquent amounts owed. Cross also made improvements upon the property, including a new roof in February 2018 and new windows in October 2020.

On November 13, 2020, Cross's attorney sent a letter to the Bells reiterating Cross's desire to exercise the option to purchase and requesting that the Bells "return the executed Purchase Agreement [attached to this letter] on or before November 22, 2020." The letter then stated Cross's intent to file suit if they failed to do so.

The Bells failed to complete the purchase agreement, and Cross filed suit against the Bells in January 2021 seeking specific performance and damages for breach of contract and quantum meruit. The Bells filed a counterclaim seeking, among other things, a declaration from the court that Cross had failed to properly and timely exercise the option and for possession of the property. Both parties filed motions for summary judgment. The trial court denied the Bells' motion for summary judgment and granted partial summary judgment to Cross on her claim for specific performance. The trial court's order held that because the language of the purchase options agreement relating to the date of the closing was ambiguous, Cross "shall be allowed to purchase the Subject Property from the Bells at the price minus the applicable

deductions in the Lease Option Agreement" and ordered the Bells to close on the transaction before July 21, 2023. The order held that "all other matters concerning [Cross's] request for damages" were denied as not ripe for summary judgment. The Bells appeal from this order.

1. The Bells argue that the trial court erred by granting summary judgment to Cross on the issue of specific performance. Specifically, the Bells argue that because Cross's notice letter did not strictly mirror the terms of the purchase option agreement it did not constitute a valid acceptance. For the following reasons, we find that a jury question remains as to whether the Bells waived strict compliance with the agreement.

Under an option contract, "the offeror accepts consideration in exchange for his promise to keep the offer open for a stated time." (Citation and punctuation omitted.) *Pargar, LLC v. CP Summit Retail, LLC*, 316 Ga. App. 668, 671 (730 SE2d 136) (2012). Although the option contract binds the offeror, the holder of the option retains the discretion whether to accept the offer. Id. An option contract is by its nature "unilateral and executory because of the complete discretion granted to the holder of the option." *Kent v. Graham Commercial Realty, Inc.*, 279 Ga. App. 537, 543

(2) (631 SE2d 753) (2006). However, an option contract is "converted into a sales contract enforceable by the seller only when the holder gives notice of the election to buy the property at the price and on the terms stated in the option contract." Id. Generally, "the option must be accepted unconditionally and strictly in accordance with its terms" in order to create a mutually binding contract. *Pargar*, 316 Ga. App. at 671. See also *Martin v. Schindley*, 264 Ga. 142, 143 (442 SE2d 239) (1994) ("An option becomes a contract between the parties binding from the date of its execution when the option is exercised according to its terms"). However, "wherever a contract provides for the forfeiture of rights on account of the failure of one of the parties to comply with certain express conditions *as to notice*, courts will readily seize upon any fact or circumstance growing out of the conduct of the parties, tending to show a waiver of strict compliance, and will seek to avoid the forfeiture[.]" (Citation and punctuation omitted; emphasis in original.) *RHL Props., LLC v. Neese*, 293 Ga. App. 838, 842 (668 SE2d 828) (2008). Compare *Pargar*, 316 Ga. App. at 671-672 (letter purporting to accept option to renew lease was a counteroffer, and not an acceptance, because it conditioned renewal upon the parties "agree[ing] to terms").

The Bells argue that because Cross offered a range of dates — instead of a specific date — to complete the closing, she did not strictly comply with the terms of the purchase option in the lease agreement. They cite to *Atkinson v. Cook*, 271 Ga. 57 (518 SE2d 413) (1999) to support their argument that the "exercise of a contractual option by an offeree must be unequivocal and in accordance with the terms of the option in order to be valid." (Punctuation and footnote omitted.) Id. at 58. In *Atkinson*, the Supreme Court of Georgia held that strict compliance was required by a buyer who purported to exercise an option by sending notice via regular mail, when the contract required notice by registered mail. Id. However, the Supreme Court also stated that there was no evidence that the seller waived his right to strict compliance with the option contract's terms and noted that it might have reached a different result if the

seller had accepted the buyer's improper notice within the option period or if he had proceeded to a closing based on the improper notice. Id. at 59, n. 8. In other cases, this Court has held that strict compliance with the notice requirement of the purchase option could be waived by the offeror's conduct. See *Sage Atlanta Props, Ltd. v.*

8

*Hawxhurst.*, 349 Ga. App. 758, 762 (824 SE2d 387) (2019) (lessor waived strict compliance with lease requirement that renewal options be sent by registered mail where, after receiving the notice via fax, the lessor did not challenge the propriety of the notice, but instead contacted lessee to inquire about the owner's authority and later accepted the renewal); *Goldman v. Vinson*, 244 Ga. App. 815, 818 (2) (535 SE2d 305) (2000) (offeror waived his right to demand strict compliance with the option contract's certified mail requirement when there was no allegation in the record that offeror did not receive notice or object to the manner in which notice was given before the option period expired).

As noted above, the purchase option agreement in this case provides that Cross "has the option to purchase from the period which commences on January 1st, 2014 and expires on January1st, 2019." The clause titled, "Notice for Purchase Option," provides as follows:

> If the Tenant desires to exercise the Option to Purchase, he/she/they shall provide written notice to the Landlord of their intent to purchase. The *closing date* shall be specified in the *notice*, which must occur *prior to the expiry of this lease purchase agreement*.

(Emphasis supplied.) Accordingly, in order to exercise the option to purchase, Cross was required to both (1) provide written notice and (2) specify a closing date in the notice. Cross's acceptance letter was sent six days prior to the expiration of the option term, and "propose[d] a meeting(s) between December, 2018 and April, 2019 to complete the proper documents to transfer ownership."

Although Cross's letter giving notice of acceptance did not strictly adhere to the terms of the offer because it identified a *range* of dates for closing that extended beyond the expiration of the option term, there is evidence in the record that the Bells may have waived strict compliance with the notice provision of the purchase option agreement. The Bells continued to communicate with Cross via text message after the expiration of the lease purchase agreement in order to exchange documents to close the deal. Further, Cross continued to live in the home after the expiration of the option term and continued to pay her rent directly to the mortgage company. When the mortgage company sent a notice of default due to the Bells' failure to pay the difference between the rent required and the increased monthly mortgage payments, Cross paid the overdue funds directly to the mortgage company. Cross also made substantial repairs to the property before and after the expiration of the option term.

See *Sage Atlanta Props., Ltd.*, 359 Ga. App. at 762 (lessor waived strict compliance with lease requirement that renewal options be sent by registered mail when lessor did not challenge propriety of notice sent by fax and instead contacted lessee to inquire about owner's authority and later accepted the renewal). Because it is clear that the Bells had actual notice of Cross's intent to exercise her option to purchase the property, that they did not inform her of her failure to strictly comply with the terms of the option prior to the expiration of the option term, and that they allowed Cross to invest in the property under the premise that she would be its ultimate owner, we find that "a jury question existed as to whether [the Bells] waived strict compliance with the notice provision contained in the" lease purchase agreement. *RHL Props.*, 293 Ga. App. at 841-842 (jury question existed in action for breach of warranty as to whether vendor waived strict compliance with provision in purchase agreement requiring that all notices be in writing signed by party giving notice where purchaser gave both oral and written notice concerning defects as the managing member had instructed her to do, and managing member promised in response to have defects repaired and workers had come to her home to attempt to make repairs); *Barkley-Cupit Enterprises, Inc. v. Equitable Life Assurance Soc. of U. S.*, 157 Ga. App. 138, 142-

143 (2) (276 SE2d 650) (1981) (issue of fact precluding summary judgment was raised with respect to whether tenant's untimely performance of option to purchase was waived by landlord).

The fact that the lease purchase agreement "expressly stated that no modification of the agreement would be binding unless signed by all of the contracting parties does not change this result. Waiver of a written modification requirement in a contract may be established through the parties' course of conduct." *RHL Props., LLC*, 293 Ga. App. at 842. The evidence discussed above creates a jury question as to whether the Bells waived compliance with the written modification requirement through their course of conduct after the expiration of the lease purchase agreement. Id.

Accordingly, we reverse the order granting summary judgment to Cross and remand the case to the trial court for further proceedings.

2. As a result of our holding in Division One, we need not address the Bells' remaining enumerations of error.

*Judgment reversed. Barnes, P. J., and Watkins, J., concur.*